**UNITED STATES of America,**
**Appellee,**

v.

**Clarence S. HOWELL, Defendant-**
**Appellant.**

**No. 1072, Docket 71–1110.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 11, 1971.

Decided Aug. 27, 1971.

Raymond J. Dearie, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., and David G. Trager, Asst. U. S. Atty., Eastern District of New York, on the brief), for appellee.

Phylis Skloot Bamberger, Robert Kasanoff, The Legal Aid Society, New York City for defendant-appellant.

Before FEINBERG, MULLIGAN and TIMBERS, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal by Clarence S. Howell from a judgment of the United States District Court for the Eastern District of New York, Orrin G. Judd, J., convicting him after a trial before a jury on bank robbery and conspiracy to commit robbery in violation of 18 U.S.C. § 2113(a) and § 371.

The convictions arose from the robbery of the Royal National Bank of New York in Brooklyn which took place at about 1:30 p. m. on October 29, 1969. On that afternoon four men entered the bank. A security guard, Alexander Corbett, was beaten by two of the men in a struggle for his gun. Another pointed a gun at the bank manager announcing that it was a holdup. A female employee was briefly detained as a hostage while another felon scooped up money from the head teller. As the four left

the bank they were observed by a passerby who saw them enter a yellow cab marked "Particular People." He made a mental note of the license plate number which quickly led to the apprehension and subsequent conviction of Faison and Pearson, two of those who had entered the bank. Three others were subsequently indicted, appellant Clarence Howell, William Hutchinson and John Harrison. The jury failed to reach a verdict as to Hutchinson; Harrison was not tried with them and later pleaded guilty to the conspiracy charge. Howell, the appellant, although acquitted of aggravated bank robbery under § 2113(d) was, as indicated, convicted of bank robbery and conspiracy.

There was no evidence that Howell was present in the bank on October 29, 1969 and the theory of the Government was that, having knowingly supplied the cab used for the robbery, he was an aider and abettor in the crime and thus liable as a principal. 18 U.S.C. § 2. The case against Howell was initiated with the discovery of the cab which had been identified as one belonging to the West Indian Cab Company and which was found abandoned in Brooklyn in the late afternoon of October 29, 1969. The cab had been rented for that day to one Paul Robinson who testified that on the evening of October 28th appellant Howell, who had known Robinson for a year, requested a loan of the cab the next day since "he had to move something." On the morning of the 29th Robinson brought the cab to Howell's office and gave him the keys in the presence of Faison and Pearson. Later that afternoon at about 3:30 p. m. Robinson met Howell at a local shoeshine parlor and received from him in payment for the use of the cab $200 in $1 and $5 bills. As he left the store, Robinson gave the money to a friend, Sam Brown, asking him to hold it since he was "nervous about it." Not having found his cab, Robinson reported it stolen to the West Indian Cab Company and later that afternoon he was confronted by F.B.I. agents in the Company's office. Robin-

son admitted that he had loaned the cab to Howell, related the story of the $200 payoff and later that night, in the presence of F.B.I. agents, he requested and received $197 (in $1 and $5 bills) back from Brown. The F.B.I. started to search for Howell but did not locate him until August 13, 1970. On this occasion a surveillance team of F.B.I. agents in an automobile drove along the street parallel with Howell, who was walking on the sidewalk. They stopped the car, identified themselves and placed him under arrest. When a crowd began to collect, Howell was placed in the car and driven two blocks away. While spread-eagled against the car for a "pat down" an agent advised him of his rights, under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He was then driven to F.B.I. headquarters in Manhattan. During the drive Howell stated "You can't put me in the bank." He also indicated that his arrest had been caused by Robinson whom he described as "that fink cabbie." He further admitted that he provided the car to Faison for the bank robbery and that he had received $200 for the use of the car. He repeated these admissions at the F.B.I. office where he was later questioned but he refused to sign either a written statement or a waiver.

On appeal, appellant argues that the Government has failed to meet its burden of establishing that he voluntarily waived his *Miranda* rights on the occasion of his arrest. The argument is made that the sudden arrest and the frisking of the man against the car while the warnings were being given would indicate a lack of understanding and comprehension by Howell which would negate the voluntariness of any admission.

The trial court, in our view, properly admitted the inculpatory statements after a voluntariness hearing which was held out of the presence of the jury. There is no question but that anyone arrested suddenly under these conditions will be surprised and indignant. However, Howell was driven away from the scene of the arrest and even though the motivation of the agents was admittedly to protect themselves against possible violence from the crowd, there was clearly an opportunity during the course of the ride for Howell to regain his composure. There is no evidence here at all of coercion, fear or duress of any kind. Howell in fact testified that he was told that he had the right to be quiet until he saw a lawyer. Appellant's reliance on United States ex rel., Stephen J. B. v. Shelly, 430 F.2d 215 (2d Cir. 1970) is misplaced. In that case the defendant was a sixteen year old boy who had no prior experience with police. He was caught in a stolen car and was not warned that his admissions could be used against him. Certainly admissions made by such a youth after a sudden arrest are to be viewed cautiously. However, Howell was scarcely a stranger to arrest or police procedures. He testified on direct examination to his prior convictions of at least six crimes and admitted to the use of several aliases.

▐ Under the circumstances of this case, Howell's refusal to sign a waiver at F.B.I. headquarters is not significant. Appellant relies on United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968) where the defendant had refused to sign a waiver until he saw his attorney but was interrogated subsequently before he saw his counsel. In this case, there is no evidence at all that any request for counsel was made and it is clear that the *Miranda* warnings were repeated. He added nothing to the admissions already made on the occasion of his arrest and there is no evidence of continuing interrogation after the refusal to sign the waiver. Hence United States v. Jenkins, 440 F.2d 574 (7th Cir. 1971) is not in point. The Government has amply sustained the burden of establishing that there was a voluntary waiver of *Miranda* rights.

Appellant also argues, although no exception was taken on the point during the trial, that the charge of the court on aiding and abetting was insufficient.

Judge Judd's main charge was as follows:

"This [18 U.S.C. § 2] says: Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"This means that anybody who helps commit a crime is just as guilty as the one who actually commits it. It doesn't mean that just knowing that a crime is being committed is enough, even if you are present at the scene. That alone does not constitute aiding and abetting. In order to aid and abet somebody else to commit a crime, the defendant must in some way associate himself with the venture. He must participate in it as something that he wants to bring about, that he seeks by his action to make it succeed; however, it is part of the law that if a person furnishes the means to carry out a robbery he is aiding the robbers just as much as if he had been a participant present at the scene; and so you can be convicted of aiding and abetting a robbery without being at the scene of the robbery."

While deliberating, the jury requested additonal instructions on the meaning of aiding and abetting and he charged as follows:

"The statute says, 'Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.'

"So a person who aids in committing a crime is just as guilty as the one who actually commits it. It doesn't mean that just knowing that a crime is being committed is enough, even if you are present at the scene. That alone does not constitute aiding and abetting. In order to aid and abet somebody else to commit a crime the defendant must in some way associate himself with the venture. There must be something he wishes to bring about that he seeks by his action to make it succeed.

"I said yesterday, also, if you furnish the means for committing a crime, which might be shown here by the evidence that Mr. Howell, if you believe it, either turned over the keys to one of the others or paid for the taxicab, that might constitute aiding and abetting. I don't charge you if you find that, that that is aiding and abetting. You are to determine for yourself beyond a reasonable doubt whether any act Mr. Howell may have done was done participating in a bank robbery or something he wished to bring about and sought by action to make succeed.

"Don't you think that covers what you want to know?"

■ Appellant's objection to this charge is based on United States v. Gallishaw, 428 F.2d 760 (2d Cir. 1970), which is cited for the proposition that the Government would have to show as a minimum, in order to obtain a proper conviction of aiding and abetting a violation of 18 U.S.C. § 2113(a), that Howell could only be guilty if he supplied the vehicle knowing that a bank was to be robbed. It would seem clear that in order to obtain a conviction, as *Gallishaw* points out, Howell would have to have a bank robbing intent when he furnished the car. In our view, Judge Judd's charge adequately apprised the jury that the venture which they must find Howell sought to bring about and to have succeed, was a bank robbery. The jury could not have been under the misconception that the mere proof of supplying the car for some unknown criminal venture was sufficient proof of aiding and abetting a bank robbery. This confusion was clearly present in *Gallishaw* where the defendant's only participation in the bank robbery venture was the supplying of a machine gun. There the trial judge specifically charged that all that was necessary for the jury to find guilt was that the gun was to be used to violate some law (428 F.2d at 762).

The misconception of the judge was further apparent in a colloquy with counsel where he indicated that from the mere supplying of a machine gun the jury might properly infer that it was to be used for some "criminal purposes" (*id.* at 764). In this case, the trial court nowhere charged that the knowledge by Howell of any unspecified criminal undertaking would be a sufficient basis to convict him for aiding and abetting a bank robbery. Both charges indicated that he had to have embarked on a particular venture with which he knowingly associated himself and which he consciously sought to make succeed. The venture in this case was clearly the bank robbery. The jury could not have been misled on this score.

 The other points raised on appeal are not substantial. The admission of a photograph of the injured bank guard, Corbett, was not prejudicial to Howell whose presence in the bank was never urged by the Government and who in fact was acquitted of the aggravated bank robbery count. The court instructed the jury that the photograph was admitted as evidence of the theft of money from the bank by the use of force and violence and was not to be the basis for making a decision either on the basis of vengeance against the defendants or sympathy for the guard. Neither was the admission into evidence of the $197.00 received by Robinson from Howell errroneous. While it is urged that there is no proof that the money came from the bank, it was certainly admissible to corroborate Robinson's testimony that Howell had paid him for the use of the cab. Moreover, Robinson testified that he was paid in bills of $1 and $5 denominations which were the denominations turned over without quibble by Brown in the presence of the F.B.I. It would be entirely reasonable for the jury to assume that Brown was just a caretaker of the funds given him earlier that day by a frightened Robinson who had been well paid for the use of the car. It was not necessary for the Gov-

ernment to exclude all other possibilities of Brown's possession and surrender of the funds to establish their authentication and admissibility, United States v. Montalvo, 271 F.2d 922 (2d Cir. 1959).

Judgment affirmed.