581 P.2d 238

**STATE of Arizona, Appellee,**

v.

**David Lee MOSLEY, Appellant.**

**No. 4146.**

Supreme Court of Arizona,
En Banc.

June 27, 1978.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Atty. Gen. by William J. Schafer III and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Stanley M. Hammerman, Phoenix, for appellant.

HAYS, Justice.

Appellant David Lee Mosley was charged by information with possession of heroin for sale (A.R.S. §§ 36–1001, 36–1002.01) and possession of marijuana (A.R.S. §§ 36–1001, 36–1002.05). Following the denial of his motion to suppress certain physical evi-

dence, appellant was found guilty of both counts by a jury. He then pled "no contest" to an allegation of a prior conviction for attempted robbery; the trial court ultimately sentenced Mosley to concurrent terms of 10 to 12 years imprisonment (A.R.S. § 13–1649). We have taken jurisdiction of this appeal pursuant to 17A A.R.S. Rules of the Supreme Court, rule 47(e)(5).

On the evening of November 4, 1976 undercover Officers Bradley and Kurth of the Phoenix Police Department were conducting surveillance of a residence at 101 South 28th Drive in Phoenix. Other officers had previously developed information, of an undisclosed nature, which had led the Department to suspect that residents of that address were dealing in stolen property and narcotics. Members of the surveillance team knew that search warrants previously had been served at this address, but did not know the results of those prior searches. They had no specific suspects, but did have a list of vehicles which had been frequently observed at the address. Kurth and Bradley, in plain clothes, began visiting with neighbors in the front yard of the house across the street from the residence in question, at about 5:45 p. m.; they were approximately 50–100 feet away from the residence. At 6:00 p. m. a blue 1966 four-door Pontiac sedan arrived at the house, but left within a few minutes. That vehicle was one mentioned on the list previously prepared by other field officers. At 6:20 p. m. the car returned and parked in the driveway of the residence. Appellant and another man, Edward Mays, emerged from the car and carried some unspecified articles from the car trunk into the house. Shortly before 7:00 p. m. appellant and Mays began carrying items out of the house and placing them into the vehicle's trunk. Kurth and Bradley observed the loading from the front yard across the street; occasionally Kurth entered the front of that residence and used binoculars to make his observations. The two suspects loaded stereo equipment, speakers, and a .22-caliber rifle into the car trunk. During one trip out to the car, Officer Bradley observed one of the two

men carrying a brown leather duffel bag and the other carrying a woman's purse, but was unable to recall which man carried which item; they were both placed in the trunk. Officer Kurth testified that Mays carried out the duffel bag. After the trunk was loaded, Kurth observed the appellant carrying a red hand towel, which he was folding in his hands, from the front door of the residence; appellant leaned into the driver's side of the car and placed the red towel somewhere inside, although Kurth was unable to tell whether it was in the front or back seat. Appellant then returned to the residence and nothing further was loaded into the car. Within a few minutes the two subjects again came out of the residence, accompanied by two females, and all four persons entered the automobile. Edward Mays took the driver's position behind the steering wheel and Vera Staples sat beside him in the front seat. Appellant and Frieda Cowley sat close together in the back seat, near the left rear door and immediately behind the driver Mays. Appellant and Frieda Cowley had to enter the right rear door and slide across the back seat to reach this position; the left rear (driver's side) door of the automobile did not work. The vehicle then backed out of the driveway and left the area.

Officer Kurth advised other officers of the surveillance team of his observations by radio. When the Pontiac pulled away from the residence, surveillance was continued by Officer Miller in an unmarked vehicle. He observed the Pontiac as it stopped briefly at two separate locations; nothing was unloaded from the car on either occasion, and all four people resumed exactly the same positions within the car after each stop. At around 7:30 p. m. the suspect vehicle arrived at the El Rancho Motel on West Van Buren Street and pulled into a small parking area near the office. Appellant slid across the rear seat, exited the right rear door and walked into the motel office. Miller then decided to approach the occupants of the car "to find out who he [Mays] was, get some identification, see if he had any weapons on him" and "to see where he was

going in case these items was stolen." Officer Miller drove into the driveway behind the Pontiac, accompanied by uniformed officers in marked patrol cars. As Miller approached the Pontiac on foot, Frieda Cowley slid across the back seat, exited the right rear door and headed for the motel office. Miller directed uniformed officers to detain her and the appellant, as he approached the driver Mays. He asked Mays to exit the vehicle, and Vera Staples remained in the front seat. After identifying himself to Mays and inspecting Mays' driver's license, Miller "patted Eddie Mays down for weapons to find out if he had any guns or knives or anything hidden on him." Then, according to Miller's testimony:

"[B]ecause Vera Staples was still in the vehicle, I shined my flashlight inside to see if there were any weapons available or ready inside of the car.

.     .     .     .     .

"I observed a part of a plastic baggie of marijuana in the back seat sticking out from a red towel.

.     .     .     .     .

"It was lying on the floorboard on the left, rear, right behind the driver's seat, and it was just partially covered by a red hand towel."

After Miller made these observations, appellant and Cowley were arrested for possession of marijuana. Upon retrieving the baggie of marijuana from the floor of the car, two other plastic bags were also discovered wrapped within the same red towel. One of the bags contained three balloons full of a powder which later proved to contain heroin; the other bag contained a condom which also contained heroin. A field test at the scene showed a positive reaction for the presence of opiates within the powder, and appellant and Cowley were also arrested for possession of narcotic drugs for sale. After the arrests, the vehicle trunk was searched and the stereo equipment, speakers, .22-caliber rifle, duffel bag, and women's purse were retrieved. The purse contained a pair of men's boxer shorts, tee shirt and yellow robe; these items were tried on by appellant prior to

trial, and appeared to fit him properly. The purse also contained more plastic baggies, one holding syringes and incense and one holding a bag of about 35 balloons, a stainless steel knife blade, two spoons, a funnel, a burned bottle cap, two cotton balls with brown residue, a can of men's shaving powder and tissue paper. Subsequent laboratory analysis revealed that the heroin contained within the condom was 8% pure and weighed 22.9 grams, while the three balloons contained a total of .66 gram of 8% pure heroin; Miller's characterization of the substance within the third baggie as marijuana proved to be correct.

At trial, the items found within the car interior and trunk were introduced into evidence, over appellant's objections. Detective David Guzzetta, with 10 years total police experience and 5 years undercover narcotics experience in the Phoenix area, testified that the street value for the 22.9 grams of heroin contained in the condom was $800–$1,000, and the street value for the three balloons was approximately $60 each; that the heroin in the condom could be divided for resale into about 229 balloons similar to the three in evidence; that the paraphernalia in the purse included items commonly used to inject heroin into the veins of a user and other items used to divide and "cut" large amounts of heroin into smaller amounts for resale; that based on the presence of the paraphernalia and on the amount of heroin found, the heroin was probably intended for resale, rather than simply for personal use. The State also introduced photographs of appellant wearing the clothing found within the purse. The defense presented testimony from Vera Staples, Edward Mays and Frieda Cowley in an attempt to create the inference that the narcotics in the Pontiac were the property of Frieda Cowley rather than the appellant. Appellant did not testify. On rebuttal, the State offered evidence of prior statements by Frieda Cowley, made to a Phoenix police officer on the night of her arrest, to the effect that the purse discovered in the trunk of the Pontiac belonged to her, that she packed clothing but no para-

phernalia into the purse, that there was no paraphernalia in the purse when she gave it to appellant, that appellant loaded the purse into the car, and the narcotics found in the car interior did not belong to her.

### THE "AUTOMOBILE SEARCH"

■ Appellant contends that the trial court erred in failing to suppress all items of evidence obtained from the Pontiac automobile, because such items were obtained as the result of a search which violated the Fourth and Fourteenth Amendments to the United States Constitution. We do not agree. Since *Terry v. State of Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), it has been established that a "stop and frisk," as opposed to a full "search and seizure" may be justified by facts which give rise to only a "mere suspicion" of criminal behavior, even though there is no probable cause to make an arrest. *See also Sibron v. State of New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *State v. Dean,* 112 Ariz. 437, 543 P.2d 425 (1975).

■ The cases appellant cites involve situations where there is both a stop by the police and a search. We do not here reach the question of whether *Terry, supra,* permits the stopping of an automobile under the "stop and frisk" doctrine for here the car was already stopped before it was approached. We have recognized that in some situations investigation, in the form of brief detention and questioning, may be necessary to a proper discharge of police duties. *State v. Gunter,* 100 Ariz. 356, 414 P.2d 734 (1966). The sole justification for the limited intrusion authorized under *Terry, supra,* is the protection of officers and others nearby; therefore, the scope of the search (a "frisk" or "pat down") must be limited to discover hidden weapons. We believe that Officer Miller's conduct in regard to the driver of the suspect automobile herein falls within this rationale. In addition to the facts previously set forth above, Miller testified to the following sequence of events as the patrol cars approached the parked automobile:

Q. Did you observe the people in the front seat at the time the spotlight came on?

A. Yes, sir, I did.

Q. What could you see of them?

A. I could see their upper parts of their bodies.

Q. Did you observe their reaction to the spotlight?

A. Yes, sir. Eddie Mays moved around a little bit.

Q. What do you mean by that?

A. Twisted, turned, leaned forward.

Q. In what direction?

A. Well, when he leaned over, I believe he leaned over toward Vera Staples' side of the car towards the dashboard part like this.

Q. Went forward?

A. That's right.

Q. Did he go back?

A. He came back into normal seating position.

.    .    .    .    .

Q. Did you see where their arms were?

A. Vera's I could pretty well see. Eddie Mays, what worried me was the fact that I couldn't see his hands at all times, especially when he leaned forward and to the right. I didn't know whether he was placing something down or reaching for something.

Miller knew that a rifle had been placed into the trunk of the automobile, but "did not know if there were any more weapons involved" at the time he approached Mays. Under all the circumstances, the officers could have reasonably suspected that criminal activity was afoot, and that persons within the vehicle were armed; thus, the limited intrusion into the privacy of Edward Mays and Vera Staples was justified. *Terry v. Ohio, supra; Sibron v. New York, supra.* Therefore, the marijuana located within the vehicle falls within the "plain view" exception to the search warrant requirement, even where the officer's vision was aided by the use of a flashlight. *State v. Cobb,* 115 Ariz. 484, 566 P.2d 285 (1977).

These surveillance officers had originally been alerted to the possibility of dealing in narcotics and stolen property at the residence in question; they had seen some items loaded into this vehicle trunk and had in fact found narcotics in the interior. The combination of circumstances thus provided probable cause to believe that further contraband might be located within the Pontiac, and a full search of the car, including the trunk, was justified. *See State v. Walker,* 119 Ariz. 121, 579 P.2d 1091 (1978); *State v. Vandeveer,* 23 Ariz.App. 331, 533 P.2d 91 (1975). We find no constitutional prohibition of the officers' conduct in the search of this automobile and seizure of the items therein, and conclude that the trial court did not commit "clear and manifest error" in its ruling on the motion to suppress. *State v. Walker, supra.*

## EVIDENCE OF APPELLANT'S "TRACKMARKS"

During a recess in the trial of this case, Detective Guzzetta observed appellant in chambers and, apparently for the first time, noted the presence of "trackmarks" on appellant's arms. He informed the prosecutor of his discovery and the prosecutor then advised defense counsel of the State's intention to introduce evidence of appellant's "trackmarks" before the jury. The trial court overruled appellant's numerous objections to this line of questioning, and Guzzetta testified that he had seen thousands of such "trackmarks" and was familiar with their origin and characteristics; that frequent use of heroin via injection leaves a series of puncture wounds called "tracks" along the veins; that heavy scar tissue "tracks" were consistent with a frequent use of heroin, but could also be caused by injection of other narcotics such as amphetamines and barbituates; that from an examination of appellant's arms during the course of the trial (in April, 1977) Guzzetta could conclude that appellant had been a frequent user of narcotics by injection, over a period of time ranging from several years to 6 months prior to the trial date. Appellant now reasserts several reasons why the introduction of this evidence constituted reversible error.

■ Appellant first contends that the evidence of "trackmarks" on his arms, and the resulting inference of prior narcotics use by injection, was irrelevant and highly prejudicial, and its introduction violated the general rule against the use of evidence of other crimes, other bad acts and bad character. However, the general rule is engrafted with well-recognized exceptions. Thus, where such evidence tends to show motive, intent, absence of mistake or accident, common scheme or plan or identity, it is both relevant and admissible. *State v. Mitchell,* 112 Ariz. 592, 545 P.2d 49 (1976). We feel that several of these exceptions to the general rule are applicable to the instant case. The mere presence of an accused at a place where a narcotic drug is found is insufficient to show knowledge of the drug's presence. *State v. Hunt,* 91 Ariz. 149, 370 P.2d 642 (1962). Here, the prosecution was required to establish, *inter alia,* that appellant exercised dominion and control over the substances found on the automobile floor, had knowledge of their presence, and had knowledge that they were narcotic substances. A.R.S. §§ 36–1001, 1002; *State v. Arce,* 107 Ariz. 156, 483 P.2d 1395 (1971). Additionally, the jury could have believed that the substances were under the dominion and control of Frieda Cowley, or were in the joint possession of Cowley and appellant. Under these circumstances, the evidence of prior narcotics use was relevant and admissible to show appellant's knowledge of the nature of the substances in question and his intent to possess them. *See State v. Shepherd,* 27 Ariz.App. 448, 555 P.2d 1136 (1976); *State v. Saiz,* 106 Ariz. 352, 476 P.2d 515 (1970); *State v. Deschamps,* 105 Ariz. 530, 468 P.2d 383 (1970).

■ Appellant next argues that this evidence was inadmissible because the expert was not sufficiently qualified and his testimony was too indefinite and speculative, in that he was unable to say exactly what type of narcotic substance caused the "trackmarks" and exactly when they were made. Expert opinion evidence on a matter

is admissible when the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact, but not when it is of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness. *State v. Salazar,* 27 Ariz.App. 620, 557 P.2d 552 (1976). In applying this standard, the determination of areas where expert testimony is appropriate is within the trial court's discretion. *State v. Knapp,* 114 Ariz. 531, 562 P.2d 704 (1977). As we said in *State v. Watson,* 114 Ariz. 1, 559 P.2d 121 (1976), *cert. denied,* 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977), an expert witness is "one who possesses skill and knowledge superior to that of men in general." 559 P.2d at 132. Whether a particular witness possesses sufficient qualifications to qualify as an expert is also within the trial court's discretion, and such a determination will not be upset on appeal in the absence of a clear abuse of discretion. *State v. Sturgis,* 113 Ariz. 311, 553 P.2d 665 (1976); *State v. Kelly,* 111 Ariz. 181, 526 P.2d 720 (1974), *cert. denied,* 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975). The highest possible qualifications to testify about a particular matter are not necessary; the extent of training and experience of an expert goes to the weight, rather than the admissibility, of his testimony. *State v. Macumber,* 112 Ariz. 569, 544 P.2d 1084 (1976); *State v. Pennye,* 104 Ariz. 146, 449 P.2d 611 (1969). Detective Guzzetta indicated that of his 10 years prior police experience, 5 years were spent in the capacity of an undercover narcotics agent, during which time he purchased narcotic drugs, met thousands of narcotics users, observed numerous "trackmarks," and accumulated information to be used in obtaining search warrants against suspected narcotics dealers. It is clear that the trial court did not abuse its discretion in determining that Guzzetta was qualified to testify about narcotics use by injection. The testimony of Guzzetta would tend to establish the period of formation of the marks as prior to, or contemporaneous with, the date of the arrest. Guzzetta's testimony established some probability that appellant had used

heroin by injection during a period prior to, or contemporaneous with, his arrest. While that proposition was not established as a certainty, it was certainly shown to be more than a mere possibility. Thus, it was properly admitted and its weight was for the trier of fact. *State v. Kelly, supra; State v. Edgin,* 110 Ariz. 416, 520 P.2d 288 (1974); *State v. Brierly,* 109 Ariz. 310, 509 P.2d 203 (1973).

Appellant finally contends that the evidence should not have been admitted because the State failed to comply with the applicable rules of discovery, in that defense counsel received no notice of the proposed "trackmarks" testimony until the trial recess, as noted above. Appellant is correct that 17 A.R.S. Rules of Criminal Procedure, rule 15.1 mandates the prosecutor's disclosure "[n]o later than 10 days after the arraignment in Superior Court." However, this mandate applies only to "material and information *within his possession or control.*" (Emphasis added.) Rule 15.1, *supra.* We do not believe that the letter or the spirit of the rule applies to the situation herein, where the prosecutor undisputedly received notice of the "trackmarks" evidence just moments before defense counsel. More appropriately, the appellant could have cited Rule 15.6 on the continuing duty to disclose, but obviously the prosecutor had complied with this rule. Under 17 A.R.S. Rules of Criminal Procedure, rule 15.7, the trial court is empowered to apply sanctions "which it finds just under the circumstances" for violations of discovery rules. One of the enumerated choices is "[g]ranting a continuance." Rule 15.7.a.(2). While we question whether sanctions were technically applicable, we note that the trial court, in an effort to be fair to the defense, offered defense counsel a recess for the purpose of allowing him to interview Guzzetta about the new testimony to be offered. The court also indicated that an additional reasonable time would be available, if so requested after the initial interview with Guzzetta. Defense counsel declined this offer, stating that "an interview at this time would be of no benefit to me," and did not request a

further continuance. In a situation such as this, where the "surprise" evidence consists of testimony about the defendant's own physical condition, of which he could hardly be unaware, we can find no specific prejudice in its introduction at trial. *See State v. Kevil,* 111 Ariz. 240, 527 P.2d 285 (1974); *State v. Lippard,* 26 Ariz.App. 417, 549 P.2d 197 (1976). The proper relief, if any, to which the defense was entitled, was a matter for the sound discretion of the trial court. *See State v. Wallen,* 114 Ariz. 355, 560 P.2d 1262 (1977); *State v. Torres,* 27 Ariz.App. 556, 556 P.2d 1159 (1976). We find no abuse of that discretion here.

## THE RIFLE

Appellant contends that the introduction into evidence of the .22-caliber rifle, which had been observed at the time it was loaded into the Pontiac trunk and later when that trunk was searched, was error because the rifle itself was irrelevant and inflammatory. The rifle was introduced during the testimony of Officer Kurth. Kurth had stated that he saw appellant leaving the residence, carrying and folding the red hand towel; the accuracy of this observation was obviously a very important matter in this trial. The prosecutor offered the rifle only to corroborate Kurth's testimony and to verify that his observations on the evening in question were accurate. The prosecutor offered to withdraw the offer if the defense would stipulate to the accuracy of Kurth's observations. Counsel for the State and for the defense were unable to reach any such stipulation, and the court admitted the rifle into evidence with a limiting instruction to the jury:

> "I should impress upon the jury that the gun is admitted only for the purpose of evidence as to the accuracy of the witness's testimony as to what he saw that night."

The trial court is allowed reasonable discretion in determining relevance and admissibility of offered evidence, and such discretion will not be disturbed on appeal unless it clearly has been abused. *State v. Stur-*

*gis, supra.* If evidence is admissible for any reason, the fact that it also incidentally raises an irrelevant issue does not make the admission of the evidence error. *Walker v. State,* 55 Ariz. 399, 102 P.2d 92 (1940). Generally, any evidence that substantiates the credibility of a prosecuting witness on the question of guilt is material and relevant, and may be properly admitted. *See McPhearson v. State,* 253 Ind. 254, 253 N.E.2d 226 (1969); *Williams v. State,* 250 Ark. 859, 467 S.W.2d 740 (1971); *State v. Hampton,* 12 N.C.App. 371, 183 S.E.2d 304 (1971); *United States v. Howell,* 447 F.2d 1114 (2nd Cir. 1971). Here, where the accuracy of Kurth's observations was crucial and where the jury was properly instructed as to the purpose of the rifle, we find no abuse of the trial court's discretion.

## CONTENTS OF THE PURSE

Appellant urges that the introduction into evidence of the purse and its contents constituted gross prejudicial error in that those items were not sufficiently connected to him, and were thus irrelevant. The paraphernalia within the purse was material evidence on the question of appellant's knowing and intentional possession of the narcotics. *See State v. McFall,* 103 Ariz. 234, 439 P.2d 805 (1968); *State v. Shepherd, supra; State v. Wells,* 17 Wash. App. 146, 561 P.2d 697 (1977); *United States v. Jones,* 543 F.2d 627 (8th Cir. 1976). But this is so only if that paraphernalia was sufficiently connected to the appellant. We think that it was. Officer Bradley testified that as the two men under observation were loading the car trunk, during one trip out to the car one of them carried the purse and another carried other items. Bradley could not recall which man carried out the purse. Kurth testified that Mays did not carry the purse. The jury could therefore have inferred that appellant carried it. Men's clothing, including underwear and a robe, was found in the purse along with the narcotics paraphernalia. Before trial, photographs were obtained showing appellant wearing this clothing, and it appeared to fit properly; these photographs were received into evidence. Also, Frieda Cowley testi-

**402**

fied that she owned the purse, but did not place the paraphernalia into it; that she gave it to appellant and he carried it out to the car. From all of the foregoing, we believe that a sufficient nexus was established connecting appellant with the paraphernalia within the purse, and that the court committed no abuse of discretion in admitting the purse and contents into evidence. *State v. Sturgis, supra.*

### SUFFICIENCY OF THE EVIDENCE

▆▆▆▆ Appellant finally contends that "the case should be reversed since the State failed to establish the appellant's guilt beyond a reasonable doubt." Whether this standard was met was of course a jury question. Our review is limited to the preliminary question of whether the trial court erred in failing to grant a judgment of acquittal. Under 17 A.R.S. Rules of Criminal Procedure, rule 20, the trial court must do so "if there is no substantial evidence to warrant a conviction." Thus, the trial court has no duty to direct an acquittal where there is substantial evidence that a defendant has committed the crime charged. *State v. Ortiz,* 115 Ariz.App. 43, 563 P.2d 298 (1977). A directed verdict should not be granted if the evidence is such that reasonable minds may differ on the inferences to be drawn therefrom. *State v. Latino,* 25 Ariz.App. 66, 540 P.2d

1285 (1975). Such evidence may be either circumstantial or direct. *See State v. Turrubiates,* 25 Ariz.App. 234, 542 P.2d 427 (1975). We feel that there was "substantial evidence to warrant a conviction" presented in this case. Appellant's reliance on *State v. Miramon,* 27 Ariz.App. 451, 555 P.2d 1139 (1976) is misplaced; in *Miramon* there was no circumstantial or direct evidence that the defendant had physical control of the narcotics or placed them into the automobile, before they were subsequently located within the car. Having found "substantial admissible evidence" for submission to the jury which would support a guilty verdict, this court will not disturb the trial court's denial of a motion for directed verdict of acquittal. *State v. Money,* 110 Ariz. 18, 514 P.2d 1014 (1973).

Having found no reversible error, the judgments of conviction and the sentences are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.