NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SHAWN DOUGLAS CAMERON, *Appellant.*

No. 1 CA-CR 19-0513
FILED 12-17-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201700132
The Honorable Lee Frank Jantzen, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Mitchell Stein Carey Chapman PC, Phoenix
By Michael T. Morrissey, Lee D. Stein, Kathleen E. Brody
*Counsel for Appellant*

## MEMORANDUM DECISION

Chief Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

**S W A N N,** Chief Judge:

¶1        Shawn Douglas Cameron appeals his convictions and sentences for luring a minor for sexual exploitation, sexual conduct with a minor, and continuous sexual abuse of a child.  We detect no error with respect to Cameron's convictions.  But because the superior court mistakenly believed that it had no discretion to impose concurrent sentences on the luring and sexual conduct counts, we vacate the sentences and remand for resentencing.

### FACTS[1] AND PROCEDURAL HISTORY

¶2        In 2003, Cameron took custody of his infant son and the victim, who was his son's half-sister.  Cameron began sexually abusing the victim when she was approximately five years old.

¶3        Over the next few years, Cameron, on a daily or weekly basis, touched the victim's genitals with his hand and his genitals.  When the victim was nine years old, Cameron penetrated her vagina with his penis one time.  Later, Cameron began performing oral sex on the victim.  Cameron told the victim that he engaged in the sexual contact to help her cope with sexual abuse she endured before he obtained custody.  Cameron called the contact "affection time."

¶4        When the victim objected to the contact, Cameron would react violently.  Eventually, Cameron offered a "compromise," whereby he would limit his sexual conduct with the victim—the "affection time"—to Wednesdays and Sundays.  Cameron continued to subject the victim to regular oral and masturbatory sexual contact through December 2016.

---

[1]        We view the evidence in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Cameron.  *State v. Holle*, 240 Ariz. 300, 301, ¶ 2 (2016).

¶5          In January 2017, the victim refused Cameron's request for sexual activity.  Cameron responded, via text:

> Okay so no affection
>
> . . . .
>
> So that's how it's going to be ok love you too wish you could love me the way I do have not even seen much of you all week
>
> . . . .
>
> sorry well I feel lost and the one thing I want you won't let me how much more can I go through what did I do and I am sorry I will be heartbroken and heartless for now on you win what a great birthday thanks again

The following day, the victim told her school's assistant principal and the school resource officer that Cameron had been sexually abusing her.  A detective and an investigator from the Department of Child Safety ("DCS") interviewed the victim at school, and a sexual assault nurse examined her the following day.

¶6          The state charged Cameron with multiple sexual offenses.  At trial, Cameron testified in his defense and denied any sexual conduct. Cameron also elicited testimony from a DCS case manager, the DCS investigator who had interviewed the victim at school, and a detective who had investigated an earlier report that Cameron was sexually abusing the victim.

¶7          The jury convicted Cameron of one count each of luring a minor for sexual exploitation (Count 1), sexual conduct with a minor (Count 2), and continuous sexual abuse of a child, a dangerous crime against children (Count 5).  The superior court sentenced Cameron to consecutive, mitigated prison terms of fifteen years for Count 5, four years for Count 2, and two years for Count 1.  Cameron appeals.

**DISCUSSION**

I.      THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY
        ADMITTING EVIDENCE OF THE VICTIM'S BROTHER'S
        ALLEGED PHYSICAL ABUSE.

¶8      Cameron first contends that the superior court erred by permitting the DCS investigator to testify that the victim's brother had been removed from Cameron's home following allegations of physical abuse. We review evidentiary rulings for an abuse of discretion. *State v. Smith*, 215 Ariz. 221, 232, ¶ 48 (2007).

¶9      On direct examination by defense counsel, the investigator testified that she met with the victim at school in January 2017. Defense counsel then inquired whether DCS had received any earlier reports of sexual abuse:

        Q. Were you familiar with [the victim]?

        A. Yes.

        . . . .

        Q. Were you aware of any previous reports of sexual abuse in
        the home?

        A. No, not of previous sexual abuse.

        . . . .

        Q. When you began your investigation did you look at prior
        reports in the state database?

        A. Prior reports for [the victim]?

        Q. Yes.

        A. There [were] prior reports on the family. None concerning
        [the victim] as being a victim.

¶10     On cross-examination, the prosecutor asked the DCS investigator if she had contacted "the Cameron family a couple of times." The investigator responded in the affirmative, and the following exchange ensued:

Q. But maybe not specifically contact with [the victim]?

A. Not as [the victim] being a victim.

Q. In fact, it was [the brother] being a victim?

Cameron objected to the final question under Ariz. R. Evid. ("Rule") 404, but the court allowed the [DCS?] investigator to answer. The investigator confirmed that the brother had been identified as a victim. Over Cameron's ongoing objection, the prosecutor continued into the nature and consequence of the reports involving the brother:

Q. Was there an allegation in May of 2016 as to physical abuse as to [the brother]?

A. There was allegations, but I don't recall the exact date.

Q. Okay. Do you know if [the brother] ultimately left the home?

A. He did.

Q. And is it DCS that took him from the home?

A. Yes. We removed him from the home.

Q. And that was in 2016?

A. I believe it was, yes.

¶11 Cameron moved for a mistrial, arguing that the investigator's testimony regarding prior allegations of physical abuse against the brother was improper other-acts evidence offered to show that Cameron had a "reputation and character for violence." The superior court denied the motion, holding that the issue of "previous investigations" arose in the "natural course of the trial" in Cameron's direct examination of his own witness. The court concluded that the testimony was not particularly prejudicial and that no curative instruction was necessary.

¶12 Rule 404(b) provides, as relevant here, that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, [or] plan . . . ." The state first contends that the evidence was admitted for the proper purpose of "rebut[ting] any suggestion that the

prior reports [to which the investigator referred on direct examination] . . . involved unsubstantiated sexual abuse claims by [the victim]." We reject that contention. The investigator testified unequivocally that there were no previous reports involving the victim or sexual abuse. There was no suggestion otherwise.

¶13 The state next contends that the evidence "corroborated [the victim]'s testimony that she was afraid to disclose the sexual abuse while [the brother] was still in the house." The victim testified that she denied any abuse when authorities questioned her in January 2014 because her brother was still living with Cameron and she was afraid—more for her brother than for herself—that Cameron "would get angry" if she disclosed her abuse. She further testified, "There was one time where [Cameron] said that if me and my brother ever reported him, and he got arrested for it, he said he'd come after us." The investigator's testimony regarding the brother's alleged physical abuse was therefore relevant and admissible. *See* Rule 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."); *State v. Mosley*, 119 Ariz. 393, 401 (1978) ("Generally, any evidence that substantiates the credibility of a prosecuting witness on the question of guilt is material and relevant, and may be properly admitted."). Further, the superior court did not abuse its discretion by declining to exclude the testimony as unfairly prejudicial under Rule 403. Relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Evidence is unfairly prejudicial if it "has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror." *State v. Mott*, 187 Ariz. 536, 545 (1997). Here, the brief testimony concerning the brother was highly probative to the victim's credibility and included no unduly prejudicial details regarding the brother's alleged abuse.

¶14 Further, any prejudice caused by the testimony was mitigated by the court's specific instruction to the jurors that they could not consider other-acts evidence "to determine the defendant's character or character trait or to determine that the defendant acted in conformity with the defendant's character or character trait and therefore committed the charged offenses." *See State v. Villalobos*, 225 Ariz. 74, 80, ¶ 20 (2010) (concluding that limiting instruction reminding the jury "of the limited purposes for which it could consider" other-acts evidence "appropriately mitigated" any prejudice from its admission); Rule 105 (requiring the trial court, upon request, to give limiting instruction when evidence is

admissible for one purpose but not another).  We presume that the jury followed the instructions.  *State v. LeBlanc*, 186 Ariz. 437, 439 (1996).

**¶15**        On this record, we conclude that the superior court did not abuse its discretion by admitting the challenged testimony and denying the motion for mistrial.

II.      THE COMMENTS OF UNSELECTED VENIREPERSONS DURING VOIR DIRE DID NOT CAUSE STRUCTURAL ERROR.

**¶16**        Cameron next contends that several comments during voir dire irreparably tainted the entire jury panel and caused structural error. We review claims of structural error de novo.  *State v. Hancock*, 240 Ariz. 393, 396, ¶ 7 (App. 2016).

**¶17**        "[E]rrors are considered structural rather than trial errors when they affect the entire conduct of the trial from beginning to end, and thus taint the framework within which the trial proceeds."  *State v. Henderson*, 210 Ariz. 561, 565, ¶ 12 (2005) (citation and internal quotation marks omitted).  A structural error is one which "deprive[s] defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'"  *State v. Ring*, 204 Ariz. 534, 552, ¶ 45 (2003) (citation omitted).  Examples include errors that result in the complete denial of counsel or the right to self-representation, involve defective reasonable-doubt instructions, or result in a biased or unrepresentative jury—all of which "infect[ ] 'the entire trial process' from beginning to end."  *Id.* at 552–53, ¶ 46 (citation omitted).

**¶18**        During voir dire, the superior court asked if any juror would have difficulty serving based on the anticipated trial schedule.  One venireperson who raised her hand in response to the question explained: "Because I just don't like it. I don't feel right. I just—I think he's guilty." The court reminded the prospective juror, and the panel, that "you haven't heard any evidence in this case, and I've already said that he's not guilty as we sit here today."  The prospective juror indicated that she understood. The court then told the panel:

> [Prospective juror], I don't want you to say anything else to prejudice the panel, but let me — and this will be maybe aimed at the rest of you.  I'm going to give an instruction that the only things you're to consider in this case is the evidence presented during the trial, and the evidence will be in the nature of testimony that comes from witnesses and exhibits

and stuff that happens during the trial, and I'll give specific instructions on that, so keep that in mind.

¶19 Thereafter, another venireperson advised the court that he had heard about the case on the news, had "strong feelings" about the case, "had experience in pedophilia . . . [and] find[s] it abhorrent." A third venireperson then stated that he could not be impartial because he had a six-year-old granddaughter. The court responded, "[w]e'll get more to the facts of this case in a moment that doesn't involve a 6-year-old," and remarked, "I have a 7-year-old granddaughter, so I can relate." Several other prospective jurors also indicated that they could not be impartial based on the nature of the charges. The superior court dismissed each juror who could not be fair and impartial, and Cameron passed the panel for cause.

¶20 Cameron now argues that "multiple inflammatory statements by panel members, one of which was reinforced by the trial judge, tainted [the] trial, defeating the constitutional guarantee of a fair or impartial jury." He does not, however, establish how the complained-of remarks affected the framework of the trial when the superior court dismissed each protesting juror and Cameron then passed the panel for cause. *See State v. Moody*, 208 Ariz. 424, 451, ¶ 93 (2004) ("We will not disturb the trial court's selection of the jury in the absence of a showing that a jury of fair and impartial jurors was not chosen." (citation omitted)).

¶21 Cameron's reliance on *Mach v. Stewart*, 137 F.3d 630 (9th Cir. 1997), is misplaced. First, in *Mach*, the Ninth Circuit Court of Appeals reviewed the challenged juror remarks for harmless error, declining to consider whether the asserted defect constituted structural error. *Id.* at 634. The case is also factually distinguishable. In *Mach*, a prospective juror relayed her career experience working with children as a social worker, then announced, in four separate statements, that she had never known a child to lie about sexual abuse. *Id.* at 632–33. The Ninth Circuit presumed that the statements affected at least one venireperson, "[g]iven the[ir] nature . . . , the certainty with which they were delivered, the years of experience that led to them, and the number of times that they were repeated." *Id.* at 633. The remarks at issue here, by contrast, were brief comments reflecting personal, anecdotal experiences and opinions of laypersons.

¶22 We perceive no structural error. Nor do we detect fundamental error. Because Cameron did not object below, he can prevail on fundamental-error review only if he proves that a fundamental error

occurred and that it was prejudicial. *Henderson*, 210 Ariz. at 567, ¶¶ 19–20. Cameron fails to meet that burden. None of the problematic jurors were selected to serve on the jury, and Cameron cites no record evidence suggesting that the seated jurors adopted the opinions of other venirepersons or failed to follow the jury instructions directing them to convict Cameron only if they found the state had proven each element of the charged offenses beyond a reasonable doubt.

III.     THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY ADMITTING "COLD" EXPERT TESTIMONY.

**¶23**          Cameron next contends that the superior court "utterly failed in its gatekeeper role" by allowing the state to introduce "cold" expert testimony about common behaviors in child sex-abuse victims. We review the admission of expert testimony for abuse of discretion. *State v. Salazar-Mercado*, 234 Ariz. 590, 594, ¶ 13 (2014). We view the expert's testimony "in the 'light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" *State v. Ortiz*, 238 Ariz. 329, 333, ¶ 5 (App. 2015) (citation omitted). Moreover, we are mindful that "[t]he trial court's gatekeeping function is not intended to replace the adversary system. Cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Rule 702 cmt. to 2012 amendment.

**¶24**          "'[C]old' expert testimony . . . educates the trier of fact about general principles but is not tied to the particular facts of the case." *Salazar-Mercado*, 234 Ariz. at 595, ¶ 21. A cold expert may testify about "general behavior patterns of child sexual abuse victims" but may not "go beyond the description of general principles of social or behavioral science" to opine on "the accuracy, reliability or credibility of a particular witness in the case being tried . . . [or] of the type under consideration." *Id.* at 594, ¶ 15 (citation omitted) (alteration in original). To be admissible, the testimony must satisfy Rule 702(a)–(c) and its probative value must outweigh any danger of unfair prejudice. *Id.* at 595, ¶ 21. Under the relevant portions of Rule 702, a witness "qualified as an expert by knowledge, skill, experience, training or education" may offer an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;

> (b) the testimony is based on sufficient facts or data; [and]

(c) the testimony is the product of reliable principles and methods.

The rule does not preclude the testimony of experience-based experts. *See McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 251, ¶ 17 (App. 2013) (noting that an expert may be qualified based on experience); Rule 702 cmt. to 2012 amendment (stating that Rule 702 "is not intended to . . . preclude the testimony of experience-based experts").

**¶25**        Cameron contends that the expert's testimony should not have been admitted under Rule 702 because it was "not based on sufficient facts or data" and was "not the product of reliable principles and methods." Cameron cites no specifics to support his assertions, and they are unfounded.  The expert testified that she had twenty-five years' experience as a police officer, had completed basic and advanced training in forensic interviewing, been involved in three or four hundred sexual abuse investigations, and had conducted six or seven hundred forensic interviews, with "roughly two hundred" involving sexual abuse allegations.  Her experience was sufficient to permit the superior court to conclude that her opinions were reliable and based on sufficient facts or data.

**¶26**        Cameron also contends that the expert's testimony was unfairly prejudicial under Rule 403 because it "impermissibly suggested to the jury that what the victim alleged happened and how it happened are usual and typical."[2]  Profile evidence—i.e., evidence suggesting that a defendant possesses one or more characteristics typically observed in persons who are committing certain crimes—"cannot be used as substantive proof of guilt because of the 'risk that a defendant will be convicted not for what he did but for what others are doing.'" *See State v. Escalante*, 245 Ariz. 135, 142, ¶ 22 (2018) (citation omitted).  But where expert testimony approaches profile evidence, "it is not categorically inadmissible," but instead must be examined in context. *State v. Haskie*, 242 Ariz. 582, 586–88, ¶¶ 16, 18–22 (2017).  "[I]ts admissibility is determined by the rules of evidence." *Id.* at 586, ¶ 16.  "[J]ust because expert testimony about behavioral characteristics is exceedingly persuasive does not mean it is *unfairly* prejudicial." *State v. Moran*, 151 Ariz. 378, 384 (1986).  "The more

---

[2]        Cameron did not request that the court articulate its Rule 403 findings in the proceedings below.  "A defendant who fails to request express findings concerning a Rule 403 determination waives any allegation on appeal that the court erred by not making such findings." *State v. Waller*, 235 Ariz. 479, 490, ¶ 40 (App. 2014).

'general' the proffered testimony, the more likely it will be admissible." *Haskie*, 242 Ariz. at 586, ¶ 18.

¶27        Cameron focuses on two exchanges between the state and the expert. First, after the expert confirmed that her role was to provide the jury with general abuse-related characteristics, she testified, in response to the prosecutor's question, that in her experience, children are more likely to be sexually abused by "someone that they know." Then, after the expert testified that child victims of sexual abuse "often" delay disclosure, rarely forcibly resist the abuse, and generally "freeze" when it occurs, she agreed with the prosecutor's phrasing that child sexual abuse often happens "behind closed doors" and "when other people are at home." As posed, the prosecutor's questions had potential to elicit improper profile evidence. But the expert repeatedly confirmed that she knew nothing about the facts of the case against Cameron. Further, her statements were sufficiently generalized so as not to constitute profile evidence. For example, the expert described a typical abuser as "someone that [the victim] know[s]"—not "someone in the same home," "a family member," or, as Cameron here, "an adoptive father." We further note that the prosecutor never mentioned the challenged testimony in his closing argument and, in fact, stated in rebuttal that "we heard no evidence from anyone how sexual perverts think, act or conduct themselves."

¶28        The superior court did not abuse its discretion by admitting the cold expert testimony.

IV.    THE SUPERIOR COURT DID NOT COMMIT FUNDAMENTAL ERROR BY PERMITTING THE FORENSIC NURSE EXAMINER TO TESTIFY ABOUT THE VICTIM'S STATEMENTS DURING THE EXAMINATION.

¶29        Cameron next contends that the superior court erred by allowing the forensic nurse examiner to testify about statements the victim made to her. Because Cameron did not object to the testimony, we review for fundamental error. *Henderson*, 210 Ariz. at 567, ¶ 19.

¶30        The nurse testified that her role as a forensic examiner was "primarily [to] ensure the patient's health and safety [and s]econdarily, to record what they told me happened, and third, based on that statement to me of what occurred, that guides me in the examination into where I may need to look for what type of injury." To achieve those goals, the nurse obtained a sexual assault history from the victim before conducting a physical examination. According to the nurse, the victim reported that:

Cameron "had been making her have affection with him" for twelve years; they "always" had affection on Wednesdays and Sundays; Cameron made her give him oral sex in the fourth grade; Cameron had vaginally penetrated her once in the past but not for several years; Cameron ejaculated on a towel he kept by the bed; and Cameron told the victim that "what happens at home stays at home."

¶31　　　　Cameron contends that the reported sexual assault history should not have been admitted because the victim's "motive during the nurse's examination was to report allegations  for the purpose of criminal prosecution, not to receive medical treatment."　Generally, under Rule 803(4), an out-of-court statement is admissible as an exception to the prohibition against hearsay if the statement:

> (A)　　is made for—and is reasonably pertinent to—medical diagnosis or treatment; and

> (B)　　describes medical history; past or present symptoms or sensations; their inception; or their general cause.

*Id.*; *see also* Rules 801 (hearsay defined), 802 (the rule against hearsay). Admissibility under Rule 803(4) is appropriate if "the declarant's motive is consistent with receiving medical care; and . . . it is reasonable for the physician to rely on the information in diagnosis or treatment." *State v. Jeffers,* 135 Ariz. 404, 420–21 (1983).  When applying the test, "the focus is on the statement, not its recipient." *State v. Lopez*, 217 Ariz. 433, 436, ¶ 11 (App. 2008).  "[S]tatements relevant to diagnosis or treatment can be  admissible even when the recipient of the statements engages in the dual purposes of medical examination and evidence collection." *Id.* at 437, ¶ 15.

¶32　　　　Applying the two-part test here, the superior court did not commit fundamental error by failing to preclude the victim's statements. First, there is no evidence that the victim saw the nurse for a reason other than receiving medical care.　The victim had already reported the allegations to school officials, a detective, and a DCS investigator the day before, and no law enforcement officer was present at the examination.  The nurse testified that she followed a standard sexual assault examination procedure, physically examined the victim, and discovered an injury consistent with the reported misconduct.　Additionally, the victim's comments were a reasonable response to the nurse's standard inquiry ("Tell me what happened to bring you here to see me today") and were reasonably used to guide the nurse's examination. *See, e.g., id.* at 436–37, ¶¶ 12–13 (concluding that victim's statements to nurse examiner were

admissible where victim actually received medical care and nurse discovered injury after learning of circumstances of the sexual assault).

## V.  THE SUPERIOR COURT COMMITTED FUNDAMENTAL ERROR BECAUSE IT MISAPPLIED THE SENTENCING STATUTES.

**¶33**　　Cameron finally contends that the superior court erred by imposing consecutive sentences for Counts 1 and 2 (respectively, luring a minor for sexual exploitation and sexual conduct with a minor) based on a mistaken belief that the law required such sentences.  A court imposes an illegal sentence, thereby committing fundamental error, when it applies the sentencing statutes incorrectly—including when it erroneously believes that it lacks discretion.  *State v. Garza*, 192 Ariz. 171, 176, ¶ 17 (1998) ("Even when the sentence imposed is within the trial judge's authority, if the record is unclear whether the judge knew he had discretion to act otherwise, the case should be remanded for resentencing."); *see also State v. Cox*, 201 Ariz. 464, 468, ¶ 13 (App. 2002).

**¶34**　　The law requires the sentence for Count 5, continuous sexual abuse of a child under fifteen years of age, a dangerous crime against children, to be served consecutively to all other sentences.  *See* A.R.S. § 13-705(M), (O), (Q)(1)(n).  The remaining offenses bear no such restriction, and the court had discretion to run the sentences for those convictions concurrently.[3]  *See* A.R.S. § 13-711(A).  Nonetheless, when it imposed Cameron's sentence, the court stated that it believed it had no such discretion:

> I have a lot of discretion in the length of the sentence, but I don't have any discretion in some of the specific terms of the sentence.
>
> . . . .
>
> I do believe the law mandates that I have to go between these —these numbers and I have to run these charges consecutively. I know it's one victim, but these offenses occurred on separate dates, different times, they're different —even different types of offenses if you go back and look at them individually and specifically.  So I have to run these

---

[3]　　Because the victim was more than fifteen years old at the time the acts underlying Counts 1 and 2 occurred, they were not dangerous crimes against children subject to the consecutive-sentence rule.  *See* A.R.S. § 13-705(M), (Q)(1)(e), (s).

consecutively, and I will run them consecutively, but I am gonna weigh the aggravating factors and mitigators.

¶35    Because we cannot say whether the court would have imposed the same sentences absent its misapprehension of the sentencing scheme, we vacate the sentences and remand for resentencing. *See Garza*, 192 Ariz. at 174–76, ¶¶ 14, 18 (remanding for resentencing where the court "wrongly felt . . . confined by a non-existent presumption"). On remand, the court has discretion to impose sentences for Counts 1 and 2 that are concurrent *or* consecutive to the sentence imposed for Count 5. *See State v. Doss*, 192 Ariz. 408, 413, ¶ 19 n.2 (App. 1998) (noting that the trial court is free to impose any legal sentence at resentencing).

## CONCLUSION

¶36    We affirm Cameron's convictions. We vacate the sentences and we remand for resentencing.



AMY M. WOOD • Clerk of the Court
FILED:    AA