293 P.3d 520

**Patrick McMURTRY, as personal representative of the Estate of Toni L. Lucario, and as the natural parent of and on behalf of Teal McMurtry; Quinn McMurtry; and Jake McMurtry, surviving children of Toni L. Lucario, Plaintiffs/Appellants,**

v.

**WEATHERFORD HOTEL, INC.; Henry D. Taylor; Pamela S. Green–Taylor, Defendants/Appellees.**

No. 1 CA–CV 10–0863.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 10, 2013.

---

Adelman Law Group, PLLC By Steven A. Adelman, Scottsdale, and Melinda K. Cekander, Attorney at Law By Melinda K. Cekander, Flagstaff, Attorneys for Plaintiffs/Appellants.

Garrey Woner Hoffmaster & Peshek, PC By D. Reid Garrey and Erin M. Evans, Scottsdale, Attorneys for Defendants/Appellees.

## OPINION

BROWN, Judge.

¶ 1 Patrick McMurtry, as personal representative of the estate of Toni Lucario and on behalf of her surviving children, appeals the trial court's orders granting summary judgment in favor of the Weatherford Hotel, Inc., ("Hotel") on his claims for premises and dram shop liability arising out of Lucario's death. McMurtry also challenges the court's evidentiary rulings regarding an expert witness and Lucario's prior alcohol use, as well as the court's denial of an adverse inference instruction based on lost evidence. For the following reasons, we vacate the court's orders and rulings at issue here and remand for further proceedings.

## BACKGROUND

¶ 2 In October 2005, Lucario was a guest at the Weatherford Hotel, a historic building located in downtown Flagstaff. Lucario stayed in Room 59, located on the third floor near the Hotel's upstairs bar. Room 59 contains a single window that is approximately three feet wide, 39.5 inches high, and has a

windowsill eight inches above the room floor. Outside the window is a narrow ledge. The Hotel's upstairs bar opens onto a balcony which is bordered by a railing. The balcony and its railing partially wrap around the exterior of the Hotel building and extend across the right thirty inches of Room 59's window, leaving an unprotected twelve-inch opening measured from the side of the balcony and railing to the far side of the window. Below the unprotected twelve-inch opening is a three-story drop to a concrete surface.

¶ 3 When Lucario arrived at the Hotel, she was informed of the "House Rules," which were orally described to every hotel guest upon check-in. The Hotel also posted signage describing the rules in its rooms, which include the following message:

> All of our rooms are non-smoking rooms. You are welcome to step out onto the balconies or visit one of the hotel bars to smoke.

On the evening of October 8, after checking into the Hotel, Lucario consumed alcohol in both of the Hotel's bars and became intoxicated. At approximately 1:00 a.m., a Hotel bartender saw that Lucario was intoxicated, refused her further service, and requested that another Hotel employee ensure Lucario was escorted to Room 59. At 1:49 a.m., Lucario climbed[1] out of the window and fell to her death. She had a blood alcohol level of .263 at the time of the fall.

¶ 4 McMurtry sued the Hotel, alleging dram shop liability resulting from the Hotel's furnishing of alcohol to Lucario when she was obviously intoxicated and premises liability based on the Hotel's failure to protect Lucario from or warn her about Room 59's window/balcony configuration. Specific to the premises liability claim, McMurtry alleged that (1) the Hotel owed Lucario a "duty of care to protect [her] from conditions that made the premises unreasonably dangerous for [her] intended and reasonabl[e] foreseeable uses;" (2) the Hotel breached its duty of care by "having no guard or stop on the window of guest room 59 which would have

prevented a hotel guest from stepping through the opening to the partial balcony on the other side" and by constructing a balcony that ended only part of the way across the width of the window; and (3) the absence of any mechanism to stop the window from opening wide enough to permit an adult from stepping through it and the unreasonably dangerous condition outside the window "were direct and proximate causes of [Lucario's] death."

¶ 5 McMurtry further alleged that (1) the Hotel had a duty to warn hotel guests of dangerous conditions and breached that duty "by giving no warning that the area outside part of the width of her window was an unprotected sheer drop to a concrete path several stories below;" (2) the danger presented by the window opening and balcony was not "open and obvious" at night as the area lacked either warning signs or exterior lighting sufficient to identify the danger; (3) signage inviting guests to use the balcony to smoke led Lucario to believe it was safe for her to do so; and (4) the absence of reasonable warnings about the dangers presented were a direct and proximate cause of Lucario's death.

¶ 6 The Hotel moved for summary judgment on both claims, alleging McMurtry had failed to provide expert testimony. McMurtry contended under Arizona law he was not required to present expert testimony in support of a negligence action. The trial court agreed with the Hotel and concluded McMurtry was required to present expert testimony to "establish the appropriate standard of care and any breach of the [Hotel's] duty." The court then granted McMurtry an extension of time to find a relevant expert. McMurtry disclosed Fred Del Marva and his preliminary opinions in support of both claims. McMurtry also moved for judgment as a matter of law on his dram shop liability claim, asserting that because the Hotel had deleted video footage of the night of the accident, the court should enter judgment in his favor as a sanction. Alternatively,

---

1. There is some divergence in the language used by the parties to describe Lucario's movement from the interior of Room 59 to the exterior of the building. Without deciding whether Lucario in fact "climbed" out the window, we use the term throughout simply to indicate that she did exit Room 59 in some manner through the window.

McMurtry requested an adverse inference jury instruction.

¶ 7 The court denied McMurtry's motion, reasoning that the Hotel did not destroy the video footage with an "evil mind" or in violation of a court order, but rather innocently deleted it under a mistaken belief that the police had made a copy of the entire recording. The court also denied the request for an adverse inference jury instruction. Relying on *Patterson v. Thunder Pass, Inc.*, 214 Ariz. 435, 153 P.3d 1064 (App.2007), the court granted summary judgment to the Hotel on McMurtry's dram shop liability claim, finding the Hotel had discharged any duty it owed to Lucario by escorting her safely back to her room. The court further determined Lucario's climbing out of the window was a superseding and intervening event that negated any possible dram shop liability of the Hotel.

¶ 8 After the parties submitted supplemental briefing addressing whether Del Marva was a qualified expert for the premises liability claim, the Hotel filed a second motion for summary judgment on that claim. The Hotel reasserted that Del Marva should not be permitted to testify as an expert for purposes of establishing a prima facie case of premises liability and that summary judgment was appropriate even if he were allowed to testify. According to the Hotel, the window was an open and obvious danger requiring no warnings; Lucario was a trespasser at the time she exited the window; and her conduct was an intervening and superseding cause of her death.[2]

¶ 9 The court ruled in favor of the Hotel on the premises liability claim, concluding the Hotel had not breached any duty it owed to Lucario on several grounds. As an additional basis, the court ruled that Del Marva was not qualified to testify as an expert witness regarding premises liability under Arizona Rule of Evidence 702 and therefore the Hotel

was entitled to summary judgment because McMurtry had failed to support his claim with expert testimony. McMurtry timely appealed.

## DISCUSSION

### A. Exclusion of McMurtry's Expert

■ ¶ 10 McMurtry asserts the trial court erred in excluding the testimony of his proffered expert, Del Marva.[3] We review the trial court's decision to permit or exclude expert testimony for an abuse of discretion. *State v. Davolt*, 207 Ariz. 191, 210, ¶ 69, 84 P.3d 456, 475 (2004). Arizona Rule of Evidence 702 governs the admissibility of expert testimony. At the time the trial court issued its ruling, Rule 702 provided as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

¶ 11 McMurtry retained Del Marva as an expert in response to the trial court's ruling that expert testimony was necessary for both the dram shop and premises liability claims. According to his affidavit, Del Marva has been in the hospitality industry for over fifty years. He has owned and operated bars and lounges, and through that experience has gained significant knowledge of "acceptable industry principles and methods needed to insure a safe and secure environment." Del Marva is the owner of Food and Beverage Investigation, which has been operating since 1985 and is "retained by its clients to ensure that their property and staff are complying with and adhering to company policies, procedures, and industry standards." Del Marva is also the president of Del Marva Corporation, "a hotel and leisure time industry consulting firm providing a variety of ser-

2. McMurtry also sought to preclude evidence of Lucario's drinking history because its probative value was outweighed by potential prejudice. The court denied the motion in limine, finding the testimony would be relevant and not unduly prejudicial.

3. McMurtry does not challenge the trial court's determination that expert testimony was re-

quired to establish a claim for premises liability. Thus, we assume without deciding that McMurtry needed expert testimony to establish that claim. Additionally, as we understand the record, the Hotel did not seek to preclude Del Marva from testifying as an expert regarding the dram shop liability claim.

vices specializing in Quality Assurance Surveys, Safety and Security Inspections, Risk Management Workshops, Policy & Procedure Development, and Foreseeability Planning for Liability Exposure." Additionally, Del Marva has twenty-three years of experience as a liability consultant specializing in "premises liability, premises security and liquor liability/[dram shop] litigation." He has been retained as an expert in more than 800 cases, including 300 dram shop liability cases, and has been "qualified to render trial expert testimony approximately forty times in fifteen jurisdictions."

¶ 12 Based on his experience, Del Marva opined that the window in Room 59 "clearly constitute[d] a dangerous condition." Specifically, Del Marva believed that the window did not conform to industry standards for hotels and was "far too large." He stated that generally, windows above ground floor should not open more than four inches and that a larger opening would pose a concern for "any public accommodation because guests must be assumed to be unfamiliar with the premises and their hazards." He noted that the "bottom window pane raises without any guard or protection, resulting in a 39.5 inch vertical opening above an 8 inch windowsill." Del Marva also explained that danger was exacerbated by the fact that "alcohol [was] served on premises as well as at taverns as close as directly across the street."

¶ 13 Del Marva described the hazard as follows:

Outside Room 59, the Weatherford Hotel presented the further hazard of a completely unprotected drop of more than three stories down to a concrete walkway below street level. Room 59 has one window. It is approximately 41 inches wide, centered over a 45 inch wide ledge. Outside the window, the balcony for the Weatherford's upstairs bar, the Zane Grey Ballroom, extends to the right along the north side of the building. Directly outside Room 59's window, the Hotel erected a metal railing that extends across approximately the right 30 inches of the window, leaving an unprotected 12 inch opening from the railing to the end of the window

ledge. Based on the video recorded by the camera outside the Zane Grey Ballroom, my understanding is that at approximately 1:49 AM on October 9, 2005, Ms. Lucario opened her window and stepped through the opening. Extending outside the bottom of the railing is 3 inches of boards, approximately the width of a shoe. I further understand that Ms. Lucario briefly stepped on these boards before plummeting to her death.

Del Marva opined further that no warning sign or notice would have been sufficient to overcome the inherent danger and that the signage that did exist, see supra ¶ 3, increased the danger. Based on those concerns, Del Marva concluded that the window/balcony configuration in Room 59 was the "most obviously unsafe window setup [he had] ever seen in a public accommodation" and even if Lucario was not severely intoxicated, "it was reasonably foreseeable that a sober guest could have fallen out of the window of Room 59."

¶ 14 The Hotel argued that Del Marva's opinions should be excluded because he was not qualified as an expert due to his lack of specialized knowledge or experience regarding hotel safety, fire and building code compliance, or the architectural design of historic hotels. The Hotel emphasized that Del Marva's training and experience was limited to private investigation, hotel safety and security, the responsible service of alcohol, and the management of bars, lounges, restaurants, and catering facilities, and asked the court to prohibit him from offering his opinions at trial concerning the safety of Room 59.

¶ 15 The court granted the Hotel's motion, recognizing that although Del Marva was familiar by experience with hotel security, such generalized knowledge "does not necessarily translate into the same knowledge or experience on the specific issue before the Court." The court placed significant emphasis on the fact that Del Marva was not familiar with building or fire codes and had no experience in hotel design, architecture, or construction. Specifically, the court noted that Del Marva did not have the requisite training and experience "in regard to design

and code requirements for the window and balcony in question;" was "not familiar with building or fire codes;" had "no experience as an architect or builder of hotels;" and had "no formal training in the areas of premises liability or code compliance."

¶ 16 Whether a person qualifies as an expert turns on "whether a jury can receive help on a particular subject from the witness." *Davolt*, 207 Ariz. at 210, ¶ 70, 84 P.3d at 475; *see also Pipher v. Loo*, 221 Ariz. 399, 404, ¶ 17, 212 P.3d 91, 96 (App.2009). "The degree of qualification goes to the weight given the testimony, not its admissibility." *Davolt*, 207 Ariz. at 210, ¶ 70, 84 P.3d at 475. Del Marva has relevant experience in the realm of hotel safety and could assist the jury in determining whether the Hotel breached its applicable duty of care. *See infra* ¶¶ 22–23. Del Marva's background and familiarity with certain building regulations goes to the weight of his testimony, not its admissibility.[4] *See Seisinger v. Siebel*, 220 Ariz. 85, 90, ¶ 16, 203 P.3d 483, 488 (2009) ("The degree of qualification goes to the weight given the testimony, not its admissibility.") (citation omitted). Furthermore, whether the Hotel complied with the relevant building and fire codes is not, as the trial court appears to have believed, dispositive of McMurtry's premises liability claim. *See Peterson v. Salt River Project Agr. Imp. & Power Dist.*, 96 Ariz. 1, 7–8, 391 P.2d 567, 571–72 (1964) (noting that "it is a jury question whether compliance with a statute is enough to meet the standard of due care which applies in actions for damages for negligence.") On remand, the Hotel will have the opportunity to cross-examine Del Marva about his experience or knowledge on various topics that may or may not be persuasive as to whether the Hotel breached its duty to alleviate any alleged dangerous conditions or give adequate warning of their existence.

¶ 17 At the time the trial court excluded Del Marva's testimony, the new version of Rule 702[5] was not in effect. We do not, however, believe the amendments to Rule 702 change the outcome on these facts. Under the new version, which is identical to the corresponding federal rule, "trial courts should serve as gatekeepers in assuring that proposed expert testimony is reliable and thus helpful to the jury's determination of facts at issue." *See* Ariz. R. Evid. 702, Comment to 2012 Amendment. However, the Comment also explains that the 2012 amendment was not intended to prevent expert testimony based on experience. *Id.* Del Marva's proffered testimony flows from his years of experience in the hospitality industry dealing with safety and liability issues in public accommodations. Thus, his testimony should be allowed under either version of Rule 702. *See id.* ("The amendment is not intended to supplant traditional jury determinations of credibility and the weight to be afforded otherwise admissible testimony, nor is the amendment intended to permit a challenge to the testimony of

---

4. Del Marva described the history of the balcony as follows:

I am aware that the owners justified the current balcony configuration along the north side of the hotel as required by the need to be historically accurate. However, the owners agreed that at no time before the 1998–99 work that resulted in the current setup had there ever been a balcony that ran only part of the way across the north side. Photographs from about 1900 to 1929 show a wood frame balcony running the entire length of the north side, including the full width of Room 59. Then, after a fire, there was no third floor balcony for the next 70 years. I have never heard of a public accommodation creating a safety hazard that never existed before in the name of historical accuracy. Even if the balcony support beams had to be installed at certain distances from each other in order to be historically accurate and obtain grant mon-

ey, as the owners testified, that cannot justify creating a new and unnecessary hazard for guests of Room 59.

5. Effective January 1, 2012, Rule 702 was amended as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

every expert, preclude the testimony of experience-based experts, or prohibit testimony based on competing methodologies within a field of expertise. The trial court's gatekeeping function is not intended to replace the adversary system."); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (noting that in the context of Rule 702, the essential inquiry is "whether particular expert testimony is reliable" and that trial courts should consider the Rule 702 factors "where they are reasonable measures of the reliability of expert testimony.").

¶ 18 In sum, the trial court abused its discretion in excluding Del Marva's testimony on the grounds that he was not qualified to testify as an expert under Rule 702.

### B.  Premises Liability

¶ 19 McMurtry argues the trial court erred in granting summary judgment on premises liability because a jury should determine (1) whether the window/balcony configuration was an unreasonably dangerous condition; (2) whether Lucario was a trespasser at the time of the fall; and (3) whether Lucario's attempt to reach the balcony from the window was an intervening and superseding cause of her death.

¶ 20 Summary judgment is appropriate when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c). We view the evidence in the light most favorable to McMurtry and determine de novo whether there are genuine issues of material fact and whether the trial court erred in its application of the law. *Unique Equip. Co., Inc. v. TRW Vehicle Safety Sys., Inc.*, 197 Ariz. 50, 52, ¶ 5, 3 P.3d 970, 972 (App.1999).

¶ 21 The trial court properly recognized that the Hotel owed Lucario a duty of reasonable care to provide her with a safe room, which the Hotel does not dispute. The court nevertheless granted summary judgment on the premises liability claim primarily on the grounds that the window/balcony configuration was not an unreasonably dangerous condition because it was open and obvious, thus relieving the Hotel of any liability. The

court also summarily found that the Hotel was relieved of liability because Lucario became a trespasser when she exited the window and because her decision to climb from her window to the balcony was an intervening, superseding cause of her death. Additionally, the court determined that McMurtry could not prevail on his premises liability claim, based on the lack of admissible expert testimony. We conclude that none of the reasons relied upon by the trial court justify granting summary judgment in favor of the Hotel.

¶ 22 In response to the Hotel's motion for summary judgment, McMurtry had the burden of establishing actionable negligence, which requires proof of (1) a duty requiring the defendant to conform to a certain standard of care; (2) the defendant's breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *See Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007). Generally, a business owner "is not [the] insurer of [guests'] safety and is not required at his peril to keep the premises absolutely safe." *Burke v. Ariz. Biltmore Hotel, Inc.*, 12 Ariz.App. 69, 71, 467 P.2d 781, 783 (1970). However, "a possessor of land 'is under an affirmative duty' to use reasonable care to make the premises safe for use by invitees." *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 355, 706 P.2d 364, 367 (1985) (quoting *Tribe v. Shell Oil Co.*, 133 Ariz. 517, 519, 652 P.2d 1040, 1042 (1982)).

¶ 23 Because Lucario was the Hotel's business invitee, the Hotel owed her a duty of reasonable care to make its premises safe for her use. *See Woodty v. Weston's Lamplighter Motels*, 171 Ariz. 265, 268, 830 P.2d 477, 480 (App.1992) (recognizing that the "status of a paying guest of a hotel ... is that of an invitee."). The standard of reasonable care generally includes an obligation to discover and correct or warn of unreasonably dangerous conditions that the possessor of the premises should reasonably foresee might endanger an invitee. *See Markowitz*, 146 Ariz. at 355, 706 P.2d at 367; Revised Arizona Jury Instructions ("RAJI") (Civil) 4th, Premises Liability 1, Notice of Unrea-

sonably Dangerous Condition, 98 (2005) (the owner of a business has a duty "to warn of or safeguard an unreasonably dangerous condition of which the [business] had notice."). "A reasonably foreseeable event is one that might 'reasonably be expected to occur now and then, and would be recognized as not highly unlikely if it did suggest itself to the actor's mind.' " *Tellez v. Saban,* 188 Ariz. 165, 172, 933 P.2d 1233, 1240 (App.1996) (citation omitted). Generally, "where reasonable people could differ as to whether the danger of some injury is foreseeable, the question of negligence is one of fact for a jury to decide." *Markowitz,* 146 Ariz. at 357–58, 706 P.2d at 369–70.

### 1. Open and Obvious Condition

■■■■ ¶ 24 Notwithstanding the existence of a duty, a landowner can be relieved of liability if the injury was caused by an open and obvious condition. *See, e.g., Daugherty v. Montgomery Ward,* 102 Ariz. 267, 270, 428 P.2d 419, 422 (1967) ("If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight.") (citation omitted); *see also* Restatement (Second) of Torts § 343A (1965) ("Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them."). Nonetheless, "although the open and obvious nature of a defect or hazard is one factor to be considered in determining whether a defendant was negligent, it is not necessarily determinative." *Udy v. Calvary Corp.,* 162 Ariz. 7, 14, 780 P.2d 1055, 1062 (App.1989); *see also Tribe,* 133 Ariz. at 519, 652 P.2d at

1042 ("Whether the step was dangerous, open and obvious, or whether appellees should have anticipated the harm if open and obvious are issues to be decided by a jury in its capacity as triers of fact."). Instead, whether a landowner "acted in accordance with its duty ... is a question that must be answered within the context of all of the facts and circumstances of [the] case[.]" *Udy,* 162 Ariz. at 14, 780 P.2d at 1062.[6]

■■ ¶ 25 McMurtry argues the window/balcony configuration in Lucario's room was unreasonably dangerous because it opened 39.5 inches vertically, the twelve-inch opening was unprotected, led to a drop of more than three stories to a concrete walkway below street level, and was adjacent to the railing of the Hotel's upstairs balcony. McMurtry also asserts that because of the window's size and location, as well as the Hotel's invitation for guests to "step out onto the balcony" to smoke, Lucario could have reasonably believed that the window was a means of access to the balcony. It is undisputed that Lucario had been smoking outside the front door of the Hotel at least twice on the evening she died and that the Hotel had notice of the unprotected opening located adjacent to the window. The Hotel asserts nonetheless it was relieved from liability based on the "open and obvious" nature of the window and balcony.

¶ 26 We question whether the window/balcony configuration, as depicted in photographs in the record and as described by Del Marva, was so "open and obvious" that the Hotel had no liability as a matter of law. In any event, McMurtry offered evidence demonstrating that material facts exist as to whether the Hotel should have anticipated the potential harm to a guest opening the

---

6. The Civil Jury Instructions Committee of the State Bar of Arizona chose not to recommend inclusion of an "open and obvious" jury instruction, reasoning that it was covered by instructions on fault and premises liability regarding dangerous conditions. RAJI (Civil) 4th, Premises Liability 1, Notice of Unreasonably Dangerous Condition, 99 Comment 2 (2005). If a court finds it appropriate to give such an instruction, the committee recommends the following:

[The defendant] claims that the condition which caused harm to [injured party] was open

and obvious. Normally a person need not safeguard or warn of a condition which is sufficiently open and obvious, that it may reasonably be expected that persons will see and avoid it. Nevertheless, if under all of the circumstances it should reasonably have been anticipated that the condition could cause harm, then a person must use reasonable care to correct or safeguard or warn of the condition, even if the condition was open and obvious. *Id.*

unsecured window in Room 59 and attempting to access the balcony located immediately adjacent to it, whether or not that guest was intoxicated. *See Murphy v. El Dorado Bowl, Inc.*, 2 Ariz.App. 341, 343, 409 P.2d 57, 59 (1965) ("the bare fact that a condition is 'open and obvious' does not necessarily mean that it is *not* unreasonably dangerous." (quoting *Cummings v. Prater*, 95 Ariz. 20, 26, 386 P.2d 27, 31 (1963))). According to Del Marva, the window was too large because it could be opened enough for an adult to climb out of it, as Lucario did. The balcony and railing wrapping around the Hotel extended across more than two feet of the window's opening, but left a gap of approximately twelve inches from which a person could fall. Additionally, the Hotel was aware that its guests occasionally sat on the window ledges to smoke cigarettes, that Lucario had smoked earlier in the evening, and that guests were encouraged to "step out onto the balcony" to smoke. According to Del Marva, the window/balcony configuration constituted a dangerous condition that could have been remedied at a minimal cost. Thus, whether this condition was "unreasonably dangerous" is a jury question.

¶ 27 In reaching its ultimate conclusion that the window was an open and obvious danger relieving the Hotel of liability, the trial court relied primarily on *Goodman v. Staples Office Store, LLC*, 2009 WL 4827204 (D.Ariz.2009), *Flowers v. K–Mart Corp.*, 126 Ariz. 495, 616 P.2d 955 (App.1980), and *Wellhausen v. University of Kansas*, 40 Kan. App.2d 102, 189 P.3d 1181 (2008). We are not persuaded by these authorities for several reasons.

¶ 28 First, the trial court relied on *Goodman* in concluding the open and obvious nature of a condition may, standing alone, relieve a landowner of liability.[7] But, after the court's ruling in this case, the Ninth Circuit Court of Appeals reversed the district court's decision in *Goodman*. The district court had granted summary judgment for a retail store, the landowner, finding it did not owe the plaintiff a duty to warn of an open and obvious condition. *Goodman*, 2009 WL 4827204 at *4. The Ninth Circuit explained that even if the dangerous condition "were open and obvious, its open and obvious nature does not automatically preclude liability." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 823 (9th Cir.2011) (citing *Tribe*, 133 Ariz. at 519, 652 P.2d at 1042). The court explained that "[i]f the proprietor should anticipate the harm from the condition despite its obviousness, he may be liable for physical injury caused by that condition." *Id.* Ultimately, the court concluded the district court "erred in concluding as a matter of law that no unreasonably dangerous condition existed at the time of [the injury]." *Id.* at 824.

¶ 29 The trial court relied on *Flowers* for the proposition that a landowner has "no duty to warn against the obvious." In *Flowers*, a car struck a customer in a K–Mart parking lot; the customer then sued K–Mart for failing to provide a crosswalk. *Flowers*, 126 Ariz. at 496–97, 616 P.2d at 956–57. K–Mart argued the "layout of its parking lot and the traffic therein was an open and obvious condition, and thus it did not breach its duty to the appellants by failing to provide a crosswalk for their use." *Id.* at 497, 616 P.2d at 957. We determined that the plaintiffs had "failed to affirmatively and specifically show that K–Mart breached any duty ... under the undisputed facts presented." *Id.* at 498, 616 P.2d at 958. In reaching that conclusion, we emphasized the plaintiffs had not offered any evidence of past accidents at that or any other K–Mart under similar circumstances and that K–Mart had no reason to anticipate harm under those circumstances. *Id.* Unlike *Flowers*, McMurtry presented evidence sufficient to create material issues of fact as to whether the Hotel could reasonably anticipate harm to its guests who stayed in Room 59. Furthermore, *Flowers* does not support the trial

7. We note that *Goodman* is an unpublished federal district court decision and that citation to such authority is generally prohibited. *See Walden Books Co. v. Dep't of Revenue*, 198 Ariz. 584, 589, ¶ 23, 12 P.3d 809, 814 (App.2000) (holding that Arizona Rule of Civil Appellate Procedure 28(c), which generally prohibits citation of unpublished decisions, is applicable to "memorandum decisions from any court"). We cite it here, however, for the exclusive purpose of explaining our disagreement with the trial court.

court's conclusion that there is "no duty to warn against the obvious."

¶ 30 Finally, the trial court relied on *Wellhausen* to support its conclusion that the Hotel did not breach the duty of care it owed Lucario. In that case, a University of Kansas student removed the screen from his dormitory window, climbed onto a ledge below the window to smoke a cigarette, and then fell to his death. *Wellhausen*, 189 P.3d at 1182. Noting that the student had signed a housing policy contract under which he agreed to abide by student handbook policies that prohibited removing window screens, exiting the windows, or being on window ledges, and that a warning posted in his dormitory room directed students not to remove the window screen or exit through the window, the Court of Appeals of Kansas ruled as a matter of law that the danger presented by the window ledge was a known and obvious danger about which the university was not required to warn. *Id.* at 1184.

¶ 31 We do not find *Wellhausen* persuasive. The university specifically warned the student about removing the window screen and the student agreed not to do so. Here, Room 59's window was three feet wide, opened to 39.5 inches vertically (more than twice that of the dorm room windows in *Wellhausen*), and had no safety screen. Unlike the university, the Hotel did not provide any notices or warnings regarding opening of windows or accessing the balcony. To the contrary, the Hotel posted a permanent notice on the door in Lucario's room inviting her to go to the balcony to smoke. Finally, unlike the situation in *Wellhausen*, Lucario was served alcohol at the two bars located *within* the Hotel.

¶ 32 In sum, McMurtry presented evidence to the trial court from which a reasonable jury could conclude the Hotel had created or was aware of an unreasonably dangerous condition and had failed to take reasonable steps to warn of the condition or correct it. Thus, we hold that the trial court erred in concluding that the Hotel did not breach its duty of care to Lucario.

### 2. Trespasser Status

¶ 33 The Hotel argues that any duty it owed Lucario was discharged when she became a "trespasser" by deciding "to voluntarily engage in an unpermitted activity which took place beyond the area to which she was invited by the Hotel." The trial court agreed with the Hotel, finding that Lucario became a trespasser when she climbed out the window of her room, thereby relieving the Hotel of liability.

¶ 34 Landowners have a duty to invitees to maintain their property in a reasonably safe manner. *See Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 142, 639 P.2d 330, 332 (1982). The particular duty owed to the entrant on the land is defined by the entrant's status. *Robles v. Severyn*, 19 Ariz. App. 61, 63, 504 P.2d 1284, 1286 (1973). The special obligation towards invitees exists only while the visitor is upon the part of the premises which the occupier has held open to him for the purpose that makes him an invitee. *See Nicoletti*, 131 Ariz. at 143, 639 P.2d at 333. This area of invitation will vary with the circumstances of the case and "extends to all parts of the premises to which the purpose may reasonably be expected to take him, and to those which are so arranged as to lead him reasonably to think that they are open to him." *Id.* (quoting W. Prosser, Law of Torts § 61 at 391–92 (4th ed. 1971)).

¶ 35 On the factual record here, whether the allegedly hazardous window/balcony configuration constituted an unreasonably dangerous condition is a jury question. The Hotel's argument—that the distance between the hotel window and the balcony partially covering the window somehow converted the invitee to a trespasser—simply ignores the obvious. When Lucario checked into the hotel earlier in the day, the front desk clerk explained to her that guests were invited to use the balcony to smoke. Signage in Room 59 invited hotel guests to smoke on the balcony, which extended partially across the width of the window of Lucario's room. As such, there is no factual or legal support for the Hotel's implicit argument that Lucario became a trespasser as soon as she climbed out of the window, par-

ticularly when the Hotel invited her to be present in her room and on the balcony.

¶ 36 Furthermore, when a landowner is aware that unpermitted areas are used by patrons but does not object or take action preventing such use, an implied invitation has occurred and the landowner's duty to maintain safe premises extends to those areas. *M.G.A. Theaters, Inc. v. Montgomery*, 83 Ariz. 339, 341, 321 P.2d 1009, 1010 (1958) (holding that when a landowner "knows, or in the exercise of ordinary care should have known, that areas of his premises not originally intended for the use of patrons are being so used, he extends to them implied invitation for such use."); *cf. Nicoletti*, 131 Ariz. at 144, 639 P.2d at 334 (declining to find that an implied invitation extended to unpermitted areas when the landowner gave a strict warning on the few occasions when an invitee went into uninvited areas). The record here establishes that the Hotel knew of previous instances where guests had been seen smoking while sitting on the ledges of the windows of guest rooms with the windows open. Thus, to the extent the area beyond the window could properly be classified as an unpermitted area, a material question of fact would still exist as to whether Lucario exceeded the scope of her invitation and thus became a trespasser.

### 3. Intervening and Superseding Event

¶ 37 The Hotel argues Lucario's act was unforeseeable and extraordinary because (1) there has never been a similar incident in the Hotel's history; (2) Lucario's decision to climb out the window was "ridiculous;" and (3) the Hotel could not have foreseen that Lucario would engage "in such a death-defying act." Thus, according to the Hotel, it has no liability because Lucario's actions constituted an intervening and superseding cause of her death.

¶ 38 Whether proximate cause exists is usually a question for the jury, unless reasonable people could not differ. *Robertson v. Sixpence Inns of Am., Inc.*, 163

Ariz. 539, 546, 789 P.2d 1040, 1047 (1990). "The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Id.* An original actor may be relieved from liability for "the final result when, and only when, an intervening act of another was unforeseeable by a reasonable person in the position of the original actor *and* when, looking backward, after the event, the intervening act appears extraordinary." *Ontiveros v. Borak*, 136 Ariz. 500, 506, 667 P.2d 200, 206 (1983). The determination of whether an event was extraordinary requires consideration of all the facts, including those about which the defendant knew nothing at the time of the event. Restatement (Second) Torts § 435, comment d.

¶ 39 Consistent with our determination that material issues of fact exist as to whether the window/balcony configuration constituted an unreasonable condition, we cannot say that Lucario's decision to open the window and step out on the ledge was an event so extraordinary that the Hotel should be absolved of liability as a matter of law. The Hotel had knowledge that many of its guests sat on its window ledges to smoke, that Lucario had smoked earlier in the evening, and that the Hotel provided signage instructing guests to step outside on the balcony to smoke. Furthermore, as noted by Del Marva, windows like the one in Lucario's room are "a particular concern where alcohol is served on premises ... for the obvious reason that intoxication affects guest inhibitions, judgment, reactions, and coordination, among other issues." For purposes of the summary judgment proceedings, the Hotel did not contest that it had served alcohol to Lucario while she was "obviously intoxicated." [8] On this record, material issues of fact exist as to whether the Hotel should have foreseen that any guest, much less a guest who is obviously intoxicated, might attempt to access the balcony via the relatively large

---

8. "Obviously intoxicated" means "inebriated to such an extent that a person's physical faculties are substantially impaired and the impairment is shown by significantly uncoordinated physical action or significant physical dysfunction that would have been obvious to a reasonable person." Ariz. Rev. Stat. ("A.R.S.") § 4–311(D) (Supp.2009) (previously § 4–311(C)).

window in Room 59. Thus, the court erred in finding that Lucario's decision to exit the window was an intervening, superseding cause of her death.

## C. Dram Shop Liability

¶ 40 McMurtry challenges the trial court's decision to grant summary judgment for the Hotel on his dram shop liability claim. In *Ontiveros*, our supreme court abolished the common law doctrine of tavern owner non-liability, stating that "those who furnish liquor have an obligation or 'duty' to exercise care for the protection of others." 136 Ariz. at 511, 667 P.2d at 211. Relying on common-law principles and implicit statutory authority, the court held that licensed sellers of alcohol "may be held liable when they sell liquor to an intoxicated patron or customer under circumstances where the licensee or his employees know or should know that such conduct creates an unreasonable risk of harm to others who may be injured either on or off the premises." *Id.* at 513, 667 P.2d at 213. Following *Ontiveros*, the legislature enacted Arizona Revised Statutes ("A.R.S.") section 4–311, codifying liability for licensees who sell spirituous liquor to obviously intoxicated purchasers. A.R.S. § 4–311 (2012) [9] (originally enacted by 1986 Ariz. Sess. Laws, ch. 329 (2d Reg. Sess.)). Under § 4–311, a licensee is liable for injuries or death if the plaintiff establishes that (1) a licensee sold liquor to an "obviously intoxicated" person; (2) the person consumed the liquor; and (3) the liquor consumption was a proximate cause of the injury or death.

¶ 41 Applying *Ontiveros* and § 4–311, this court has held that a tavern owner has a duty to "exercise affirmative, reasonable care in serving intoxicants to patrons who might later injure themselves or an innocent third party, whether on or off the premises." *Patterson*, 214 Ariz. at 438, ¶ 13, 153 P.3d at 1067. Liability under A.R.S. § 4–311 is not unlimited, however. In *Patterson*, a tavern served intoxicating liquors to an obviously intoxicated patron, but, when the patron tried to leave, tavern employees confiscated the patron's vehicle keys and drove her home. *Id.* at 436, ¶ 3, 153 P.3d at 1065.

After the employees left, the patron, unbeknownst to the employees, returned to the tavern, got in her car, and caused an accident while trying to drive home. *Id.* The driver of the other vehicle sued the tavern, alleging he had sustained damages as a result of its negligent over-service of intoxicating liquor to the patron. *Id.* at ¶ 4. On appeal, we determined that the tavern had fulfilled its duty of care by taking the ameliorative steps of separating the patron from her vehicle and arranging for safe transportation to her home. *Id.* at 439, ¶ 16, 153 P.3d at 1068.

¶ 42 The trial court in this case relied on *Patterson* in concluding the Hotel had discharged its duty to Lucario by refusing to serve her more alcohol and escorting her to her room. McMurtry argues *Patterson* is distinguishable because in this case, the Hotel did not deliver Lucario to a "place of safety" after it refused her further service, but instead returned her to a hotel room that contained a hazardous window/balcony configuration. We agree with McMurtry on this point. Although we do not read *Patterson* as requiring a licensee to deliver an obviously intoxicated patron to a place of safety, we do not believe *Patterson* supports the proposition that the licensee is relieved of liability merely by transferring an intoxicated patron from the bar to another location. Instead, a licensee's liability turns on whether it has fulfilled its duty "to exercise affirmative, reasonable care in serving intoxicants to patrons who might later injure themselves or an innocent third party, whether on or off the premises." *Id.* In *Patterson*, we explained that the tavern was relieved of liability due in part to the fact that "no evidence exist[ed] in the record that the tavern's employees knew or should have known that [the patron] intended to return shortly thereafter." *Id.* Here, on the other hand, a material factual issue exists as to whether the Hotel used reasonable care in escorting Lucario to Room 59 given the hazard allegedly posed by the window/balcony configuration. *See Harris v. Gower, Inc.*, 153 Ill.App.3d 1035, 106 Ill.Dec. 824, 506 N.E.2d 624, 626 (1987) (finding a proper claim for common-law negligence existed where a tavern employee escorted a

9. Absent material revisions after the relevant date, we cite a statute's current version.

258

patron to his car, left the patron in the car, and the patron froze to death while unconscious). Accordingly, we cannot conclude, as a matter of law, that the Hotel was absolved of liability simply by escorting Lucario to her room.[10]

¶ 43 The trial court also found that Lucario's decision to climb out of her window was "unforeseeable and extraordinary." We have already concluded that a question of material fact exists as to whether the Hotel should have foreseen the possibility that a patron, intoxicated or not, would have attempted to climb out of the window in Room 59. The trial court therefore erred in granting summary judgment on McMurtry's dram shop liability claim.

### D. Lucario's History of Alcohol Use

¶ 44 McMurtry argues the trial court erred in denying his motion in limine to exclude evidence of Lucario's drinking history. Generally, we review challenges to the court's admission or exclusion of evidence for an abuse of discretion. *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 399, ¶ 10, 10 P.3d 1181, 1186 (App.2000). If the evidentiary ruling is predicated on a question of law, we review that ruling de novo. *Id.*

¶ 45 McMurtry filed a motion in limine to exclude evidence that Lucario was at the Hotel on October 8, 2005, to attend an alcohol awareness class because she had been cited for driving under the influence of alcohol, and she regularly consumed excessive amounts of alcohol. McMurtry argued the court should exclude this evidence because it was not relevant to the premises liability claim, it would be impermissible character evidence, and any relevance was substantially outweighed by the danger of unfair prejudice. The court denied the motion, ruling the evidence was relevant to (1) the Hotel's affirmative defense that Lucario was more than fifty percent at fault for the accident,[11] (2) establishing Lucario's prior knowledge about the dangers of drinking alcohol, and (3) giving necessary context for the jury to understand how Lucario's alcohol consumption may have affected her decision-making.

¶ 46 " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401. Lucario's history of alcohol abuse and her attendance at the alcohol awareness class after being

---

10. In concluding that the employees in *Patterson* had taken adequate ameliorative steps to extinguish liability, we stated that A.R.S. § 4–244(14) (2012) specifically contemplates compliance with § 4–311 by "(1) stopping the further service, sale or furnishing of spirituous liquor; and (2) arranging for transportation of the intoxicated individual off of the premises by a non-intoxicated person." 214 Ariz. at 439, ¶ 16, 153 P.3d at 1068. We determined that the employees' conduct in *Patterson* complied with the express language of the statute, thereby relieving the tavern of liability. *Id.* In this case, even if we assume the Hotel escorted Lucario "off of the premises" for purposes of the statute, because factual issues remain as to whether there was a foreseeable danger in Room 59, we cannot conclude that the Hotel was relieved of liability simply by removing Lucario from the Hotel bars. Furthermore, we are not convinced that A.R.S. § 4–244(14) was intended to affect civil liability. Unlike § 4–311, § 4–244 is a criminal statute that makes it "unlawful" to commit certain alcohol-related offenses. Pursuant to § 4–246(B) (2012), it is a class one misdemeanor to violate § 4–244(14). Nothing in the statutory language suggests § 4–244 was meant to substantively affect the application of civil liability under § 4–311. *Cf. Pfeil v.*

*Smith*, 183 Ariz. 63, 65, 900 P.2d 12, 14 (1995) (noting that A.R.S. § 13–413, a criminal statute, contains express language allowing for use of that statute's justification defense in both criminal and civil cases); *Williams v. Baugh*, 214 Ariz. 471, 473, 154 P.3d 373, 375 (App.2007) (same); *Del E. Webb Corp. v. Superior Court*, 151 Ariz. 164, 168, 726 P.2d 580, 584 (1986) (noting that "the courts of this state have consistently stated that A.R.S. § 4–244 and its predecessors were intended to regulate the liquor business and not to broaden civil liability of tavern keepers."). Accordingly, we disagree with *Patterson* to the extent it suggests that § 4–244(14) serves to limit a licensee's potential civil liability.

11. Arizona law allows the finder of fact in a civil action to determine that the defendant is not liable if:

the defendant proves that the claimant or, if the claimant is an heir or the estate of a deceased person, the decedent was under the influence of an intoxicating liquor or a drug and as a result of that influence the claimant or decedent was at least fifty per cent responsible for the accident or event that caused the claimant's or decedent's harm.

A.R.S. § 12–711 (2012).

cited for driving under the influence of alcohol tend to show that she understood the dangers and effects of excessive alcohol consumption and were therefore relevant to the Hotel's defenses.

¶ 47 However, there is no indication in the record the trial court considered whether the prejudicial effect of the evidence would substantially outweigh its probative value. *See* Ariz. R. Evid. 403; *Yauch,* 198 Ariz. at 403, ¶ 26, 10 P.3d at 1190 (stating the balancing of factors under Rule 403 is peculiarly a function of trial, not appellate courts); *Shotwell v. Donahoe,* 207 Ariz. 287, 295–96, ¶ 33, 85 P.3d 1045, 1053–54 (2004) ("For the benefit of the appellate court, a trial court conducting its Rule 403 analysis should explain on the record its Rule 403 weighing process."). We therefore vacate the court's denial of McMurtry's motion to exclude that evidence and direct it, on remand, to balance the probative value of the evidence concerning Lucario's history of alcohol use with its prejudicial effect under Arizona Rule of Evidence 403.[12]

### E. Adverse Inference Instruction

¶ 48 McMurtry argues the trial court erred in denying his request for an adverse jury instruction arising from the Hotel's failure to preserve video footage.[13] Specifically, McMurtry alleges the video footage of the evening of October 8, 2005 and the early morning of October 9 would have "shown the obviousness of Ms. Lucario's intoxication." Based on the loss of evidence, McMurtry asserts the "jury should be allowed to consider the loss of this key evidence and draw any inferences it chooses to draw from that loss."

¶ 49 According to Jason Kukuk, an employee responsible for on-site technology, the Hotel had multiple video cameras recording Lucario's movements on the night in question. The video footage was recorded on a computer hard drive set to automatically overwrite old footage after approximately fourteen days. Following Lucario's fall, the Hotel's two owners reviewed the video footage along with Kukuk. Kukuk then created a log describing Lucario's movements leading up to her fall from the window. Kukuk testified at his deposition that, following the accident, he understood the police had copied the hard drive to a compact disc and, accordingly, there was "no reason at all" for the Hotel to keep the video footage of Lucario on the night of the accident. Accordingly, neither he nor anyone else at the Hotel made an effort to preserve the footage.

¶ 50 In his motion, McMurtry informed the court that contrary to Kukuk's belief, the police copied only the portion of the video that captured Lucario's fall from the window.[14] Thus, McMurtry asserted the Hotel had destroyed evidence by failing to stop the automatic overwriting process or otherwise preserve the video footage. The court found that imposition of any sanctions against the Hotel was inappropriate because the Hotel had innocently destroyed the video footage. The court also concluded McMurtry had not been prejudiced by the loss because he could still reconstruct Lucario's movements on the evening of the accident based on Kukuk's log and because his experts could offer their opinions on the issue of over-service of alcohol.

¶ 51 Arizona does not recognize spoliation[15] of evidence as an independent

12. In denying McMurtry's motion, the court did not address his arguments that the evidence was inadmissible character evidence pursuant to Arizona Rules of Evidence 404(a) and 608(b). The court may address those arguments if McMurtry chooses to raise them on remand.

13. In the trial court, McMurtry requested judgment as a matter of law on his dram shop liability claim as a sanction for the Hotel's failure to preserve the video. In denying McMurtry's motion, the court found that such an extreme sanction was not warranted. Because McMurtry does not appeal that aspect of the court's ruling, we do not address it. *See Dawson v. Withycombe,* 216 Ariz. 84, 100 n. 11, ¶ 40, 163 P.3d

1034, 1050 n. 11 (App.2007) (noting that arguments not raised in appellant's opening brief are waived).

14. The video copied by the police purportedly showing Lucario's fall is not included in the record on appeal.

15. Spoliation is defined as " '[t]he intentional destruction of evidence.... The destruction, or the significant and meaningful alteration of a document or instrument.' " *Smyser v. City of Peoria,* 215 Ariz. 428, 438–39 n. 11, ¶ 32, 160 P.3d 1186, 1196–97 n. 11 (App.2007) (quoting Black's Law Dictionary 1257 (6th ed. 1990)).

tort. *Tobel v. Travelers Ins. Co.*, 195 Ariz. 363, 371, ¶ 43, 988 P.2d 148, 156 (App.1999). Arizona does, however, recognize that "litigants have a duty to preserve evidence which they know, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Souza v. Fred Carries Contracts, Inc.*, 191 Ariz. 247, 250, 955 P.2d 3, 6 (App.1997) (internal quotations and citations omitted). When a party breaches that duty and does not properly preserve relevant evidence, a trial court has discretion to impose sanctions. *Id.* One available sanction is to instruct the jury that it may infer that destroyed evidence would have been unfavorable to the position of the offending party. *See Smyser v. City of Peoria*, 215 Ariz. 428, 440, ¶ 38, 160 P.3d 1186, 1198 (App.2007). In determining whether an adverse inference instruction is appropriate, the "trial court has substantial discretion," but should consider any "bad faith or intentional destruction" and whether the loss of evidence prejudiced the party seeking sanctions. *Id.* at 439–40, ¶¶ 36–38, 160 P.3d at 1197–98.

¶ 52 In this case, the trial court found sanctions were not appropriate because the Hotel did not destroy the video with an evil mind, and McMurtry would still be able to "reconstruct the events surrounding the movements of Ms. Locario [sic] during the evening in question." Without deciding whether the Hotel acted with an evil mind when it allowed the evidence to be destroyed, we disagree with the trial court's findings that the Hotel "innocently" destroyed the footage and that McMurtry was not prejudiced by the loss thereof. The Hotel's owners and Kukuk each reviewed the video footage of Lucario's fall from the window in Room 59. As soon as they learned of Lucario's death on the Hotel premises, the possibility of a lawsuit should have been apparent. And, because there was a strong likelihood of subsequent litigation and the footage would be relevant thereto, the Hotel had an obligation to take reasonable measures to preserve the recording. Moreover, the Hotel's belief that the entire recording was available through the police was wrong and was not verified by the Hotel.

¶ 53 In finding that McMurtry had not been prejudiced by the loss of the footage, the court emphasized that he could still reconstruct Lucario's movements on the night in question based on Kukuk's log and McMurtry's experts would be able to testify to Lucario's visible intoxication at the time of over-service. While we agree that McMurtry would have those options available, we do not agree they would be as helpful as the video footage itself. Without the footage, McMurtry's experts will have to speculate about what effect a .263 blood alcohol level would have on a woman of similar height and weight to Lucario, whereas the video footage could have depicted Lucario's actions and demeanor while she was in hotel and bar areas. Furthermore, the trial court assumed that McMurtry would be able to prove the "obviously intoxicated" element of his dram shop liability claim. Nothing in the record indicates that the Hotel has conceded that element and we thus assume that McMurtry will still have to prove it at trial. The video footage of the hotel on the night of October 8 could have been the most reliable and objective evidence of whether Lucario was "obviously intoxicated" at the time the Hotel served her alcohol. *See* A.R.S. § 4–311(D); *supra*, note 8. Thus, we cannot agree with the trial court that the loss of such pertinent evidence did not prejudice McMurtry.

¶ 54 We also note that in the same ruling that it decided McMurtry's motion requesting an adverse inference, the trial court granted the Hotel's motion for summary judgment on the dram shop liability claim. It is therefore unclear whether the trial court's decision that sanctions were not warranted was affected by its decision to grant summary judgment for the Hotel on that claim. Accordingly, we vacate the trial court's ruling and remand for reconsideration. In doing so, we state no opinion as to whether sanctions, including an adverse inference instruction, will be ultimately necessary or appropriate in this case. Instead, we merely conclude that because we are reinstating McMurtry's dram shop liability claim,

further consideration of his request for an adverse jury instruction is warranted.

## CONCLUSION

¶ 55 For the foregoing reasons, we vacate the trial court's ruling that Del Marva was not qualified as an expert witness to testify regarding whether the Hotel breached the standard of care. We also vacate the court's orders granting summary judgment to the Hotel on premises liability and dram shop liability. Finally, we vacate the court's rulings on the admissibility of Lucario's drinking history and McMurtry's request for a jury instruction relating to the lost video evidence. Accordingly, we remand for further proceedings consistent with this decision.

CONCURRING: PATRICIA K. NORRIS and PHILIP HALL, Judges.