NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TERESA OTT, *Plaintiff/Appellant,*

*v.*

BANNER HEALTH, *Defendant/Appellee.*

No. 1 CA-CV 19-0463
FILED 4-13-2021

Appeal from the Superior Court in Maricopa County
No.  CV 2017-002928
The Honorable James D. Smith, Judge

**VACATED AND REMANDED**

COUNSEL

Mick Levin, PLC, Phoenix
*Counsel for Plaintiff/Appellant*

Campbell, Yost, Clare & Norell PC, Phoenix
By Sigurds M. Krolls, Rachel Anna DaPena
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge D. Steven Williams and Judge Jennifer M. Perkins[1] joined.

---

**B R O W N**, Judge:

¶1            Teresa Ott appeals the superior court's order granting summary judgment to Banner Health ("Banner") on her claim for medical malpractice. Because Banner has not shown entitlement to judgment as a matter of law on the issue of proximate cause, we vacate the order and remand for further proceedings.

## BACKGROUND

¶2            Ott, age 74 at the time, was admitted to a Banner hospital on March 11, 2015, for medical care based on her "diagnoses of pneumonia, bronchospasm, and hypoxia." Banner employees determined Ott "was at a high risk for falling and that certain fall risk precautions should be implemented," including use of a bed exit alarm. The medical records also noted that Ott's "gait or balance was weak" and labeled her balance as "dizzy."

¶3            The next day, Ott's daughter called and informed Banner nurse Melissa Sheets that Ott was "confused." Sheets met with Ott but did not reassess her fall risk. Sheets then allegedly set the bed alarm to the "medium" setting. Sometime later that evening, the bed alarm sounded. When Sheets and another nurse  ran into the room, they found Ott lying on the floor. Later testing revealed she fractured her right hip. The alarm setting was not documented in medical records until after Ott's fall.

¶4            Ott filed suit against Banner, alleging in part it failed to conform to the standard of care recognized by similarly-situated health care providers and thereby caused her injury. Ott later disclosed Sharon Rennick, a registered nurse with 33 years' experience, as her medical expert.

---

[1]      Judge Jennifer M. Perkins replaces the Honorable Kenton D. Jones, who was originally assigned to this panel. Judge Perkins has read the briefs, reviewed the record, and watched the recording of oral argument.

¶5 Rennick testified at her deposition that Sheets failed to prevent an avoidable injury to Ott. Rennick acknowledged Sheets had earlier stated in a deposition that the alarm was on the "medium" sensitivity setting, but Rennick concluded nonetheless the alarm was either not set at all or set too low, or, if it was on medium, the response to the alarm by medical staff was too slow to prevent the fall. Rennick explained that if a bed is set up appropriately, then it should allow enough time for nursing personnel to enter the room before a patient can move "from a sitting to a standing position." She also opined that Sheets' failure to reassess Ott's fall risk meant that Banner failed to place her on a fall precaution "that would set things in motion of higher alert," including greater awareness that Ott could fall and "the alert of a quicker response time" to a bed alarm. Rennick ultimately concluded the fall would not have occurred if Banner's medical personnel had responded in a timely manner when the bed alarm was triggered.

¶6 Banner moved for summary judgment on causation, asserting in part that Ott had failed to produce any expert testimony "to establish a causal connection between the vague criticisms" of Banner and Ott's fall. In response, Ott countered in part that Rennick provided standard of care opinions, and if the standard of care had been met, the fall would have been prevented. The superior court granted Banner's motion and Ott timely appealed.

## DISCUSSION

¶7 Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). In ruling on a summary judgment motion, a court may not pass on the credibility of witnesses, weigh the quality of evidence, or choose among conflicting inferences. *Orme School v. Reeves*, 166 Ariz. 301, 311 (1990).

¶8 To establish a prima facie claim of medical negligence, a plaintiff must provide evidence that:

> 1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances.

3

2. Such failure was a proximate cause of the injury.

A.R.S. § 12-563. Banner sought summary judgment only on the question of whether Ott established a prima facie case of proximate cause, which necessarily means Ott satisfied § 12-563(1), at least for the purposes of resolving Banner's motion. Stated differently, we presume Sheets failed to exercise the degree of care expected of a reasonable nurse acting under similar circumstances, as reflected by Rennick's expert opinion.

¶9　　　　Given that narrow issue, we need not resolve the parties' dispute as to whether the record unequivocally shows the alarm was set on medium. We do note, however, that the only evidence we have found concerning the bed alarm setting is based on Rennick's testimony, who merely acknowledged that Sheets had said earlier in a deposition that the alarm was set to medium. But none of Sheets' deposition is in the record. And Rennick made it clear she understood what Sheets had said, but still offered her opinion that the alarm was either set too low or not turned on at all. Regardless of whether a question of fact exists about the alarm setting, Rennick opined that if the alarm was on medium, then Banner's employees responded too slowly. More importantly, because Banner only sought summary judgment on causation, issues concerning assessment of Ott's fall risk and the precautions taken, or not taken, are not the questions we must decide. Instead, the dispositive issue is whether Banner has established as a matter of law that Ott failed to show a causal connection between Sheets' failure to meet the standard of care and Ott's fall.

¶10　　　　The "proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546 (1990) (citation omitted). A defendant's acts are the proximate cause of a plaintiff's injury only if they are a substantial factor in bringing about the harm and the injury would not have occurred "but for" the defendant's negligent conduct. *Barrett v. Harris*, 207 Ariz. 374, 381, ¶¶ 26–27 (App. 2004). "Whether proximate cause exists is usually a question for the jury, unless reasonable people could not differ." *McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 256, ¶ 38 (App. 2013).

¶11　　　　A plaintiff in a medical negligence case must present expert testimony to prove the causal connection between an act or omission and the ultimate injury, unless the connection is readily apparent. *Barrett*, 207 Ariz. at 378, ¶ 12. Further, to "establish the requisite causal connection, the plaintiff's expert is generally required to testify as to *probable* causes of the

plaintiff's injury." *Benkendorf v. Advanced Cardiac Specialists Chtrd.*, 228 Ariz. 528, 530, ¶ 8 (App. 2012).

**¶12** Banner has not challenged Rennick's qualifications to testify as an expert witness based on her experience. *See Rasor v. Nw. Hosp. LLC*, 244 Ariz. 423, 430, ¶ 25 (App. 2018) (concluding that based on registered nurse's knowledge, skill, experience, training, or education, she was qualified to testify as a causation expert). Instead, Banner first points to the bed alarm being set on the medium setting as a "finding on the undisputed record." As noted above, however, that fact is not necessarily undisputed. Regardless, whether the alarm should have been set on medium, and was actually set on medium, are questions about whether Banner breached the standard of care, not whether there was a causal connection between such breach and Ott's injury. And even if no question of fact exists on whether the bed alarm was set on medium, Rennick generally opined that if Banner's staff had responded in a timely manner when the alarm was activated, they would have prevented Ott from falling.

**¶13** Addressing in part the connection between Banner's omissions and its failure to prevent Ott's fall, the following exchange occurred between Banner's counsel and Rennick:

Q. Okay. And what's the basis of your belief that she failed to prevent an avoidable injury?

A. The fact that the patient (A) fell, and (B) did sustain a hip fracture.

Q. And you believe that was an avoidable injury?

A. I believe the fall was avoidable, which encompassed the injury of the hip fracture.

Q. Why do you believe that the fall was avoidable?

A. Because if all -- if aspects of protecting that patient was [sic] in place, then due to the bed alarm and response time to the alarm, there should have been enough time for Nurse Sheets to present herself in the room . . . and be there prior to her falling.

. . . .

Q. Okay. But why, in this case, do you believe that the mere fact that a patient fell was a violation of the standard of care when you told me in the very beginning of this deposition that you've testified in other cases that patient falls can happen in the absence of negligence? What's different here?

. . . .

[A.] The difference in this one, as I said, is the fact that the nurse assumed the duty and set the bed alarm on the medium setting. And when you do that, you are establishing that you will be there when the alarm goes off. And the way the beds are designed, from a sitting to a standing position, gives ample time for a nurse to go in and assist the patient before they actually stand.

. . . .

Q. And you told me also that you've agreed in the past that falls can occur in a matter of seconds so, therefore, a nurse may not be able to get to that room in a matter of seconds. Right?

A. I have testified to that, yes.

Q. So why do you believe it's any different in this case?

. . . .

[A.] Because, if I'm not mistaken, this is one of the first depositions I have given regarding the bed. And the bed plays a huge part in fall prevention. And that -- the fact that the alarm is being set appropriately to prevent a patient from falling is what I'm reflecting on in this -- in regards to my opinions.

Historically, like I said before, you have the bed in a medium setting and that is designed to hit the alarm -- if all things are in the right place, hit the alarm to prevent you going from a sitting to a standing position and gives you ample time to get in there.

. . . .

Q.  Is a matter of seconds ample time if you're in another patient's room?

A.  The standard is you essentially drop everything and you run.

Q.  But if it's a matter of seconds, you simply may not have the time to get there.  Right?

A.  But somebody would.

 Q.  But somebody would.  Well, how long did it take in this case?

A.  We don't have an exact --

Q.  No basis for your opinion to say how long it took in this case.  Right?

A.  The only thing I have is based historically and what I have seen in hospitals with these kinds of beds or -- like in my hospital, for example, that once that patient is [in] that sitting position, you have time to get in there.  Not walking, obviously.  You're going to drop everything and go. So you're talking about a few seconds.  But you still have that time to do it.

Q.  But a patient can actually sit up and get out of bed in a matter of seconds if they wanted to.  It doesn't have to be we'll sit up and then we're going to wait a second and then get up.  Right?  It can be all one motion, can't it?

.  .  .  .

[A.]  It can be.  But the way the bed is designed to alarm, it's going to catch it before you get to that point, is what I'm saying.

¶14        Banner argues that Rennick's opinions are speculative because they are not based on evidence or concrete data, but Banner did not seek to preclude her opinions under Arizona Rule of Evidence 702.  Banner also asserts that Rennick was "obligated to identify a specific standard of care violation and explain how and why that alleged deviation caused or contributed to the outcome."  Rennick, however, provided sufficient detail to defeat summary judgment.  If the bed alarm was set too low, or was not

set at all, causation can be readily inferred. If the alarm was set on medium, then from Banner's failure to reassess Ott's fall risk and take steps to confirm heightened awareness of the risk, as well as its failure to timely respond to the alarm, a jury could reasonably infer Banner's omissions were the "but for" cause of Ott falling on the floor and breaking her hip. *See Robertson*, 163 Ariz. at 546 (1990) ("Only when plaintiff's evidence does not establish a causal connection, leaving causation to the jury's speculation, or where reasonable persons could not differ on the inference derived from the evidence, may the court properly enter a directed verdict."); *Purcell v. Zimbelman*, 18 Ariz. App. 75, 82–83 (1972) (recognizing that because no one "can say with absolute certainty what would have occurred if the defendant had acted otherwise," the question of causation is "peculiarly for the jury") (citation omitted).

¶**15**        Finally, Banner's criticism of the lack of foundation or strength of Rennick's testimony, such as unfamiliarity with the layout of the hospital, or how many seconds it took for Ott to get out of the bed or for the nurses to respond, relate to whether Banner breached the standard of care. And to the extent those criticisms undercut the strength of Rennick's causation opinion, they should be resolved by the trier of fact. *Cf. State v. Bernstein*, 237 Ariz. 226, 230, ¶ 18 (2015) ("In close cases, the trial court should allow the jury to exercise its fact-finding function, for it is the jury's exclusive province to assess the weight and credibility of evidence."); *Rasor*, 244 Ariz. at 429, ¶ 24 (recognizing that even though defendant criticized expert's failure to review patient's "complete medical records," the issue goes to the weight of the expert's testimony); Ariz. R. Evid. 702 cmt. (2012) ("Cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

**CONCLUSION**

¶16         Given the procedural posture of this case, and viewing the evidence in the light most favorable to Ott, we cannot say that Banner established lack of causation as a matter of law. We therefore vacate the superior court's order granting summary judgment and remand for further proceedings. We award costs to Ott upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA

9